## HILDA SATREN v. HADER CO-OPERATIVE CHEESE FACTORY.[1]

April 29, 1938.

No. 31,584.

[1]Reported in 279 N. W. 361.

554

*A. J. Rockne* and *E. B. Rockne*, for appellant.

*Thomas Mohn* and *Horace W. Mohn*, for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying a new trial. The action was to enjoin defendant from discharging the whey, washings, and sewage from its cheese factory into a spring-fed run or creek which passes through plaintiff's farm, and to recover damages for polluting the stream. There was a trial to the court and findings in favor of plaintiff and for judgment permanently enjoining defendant from discharging sewage and whey into the stream and $378 damages and costs.

The short facts are these: Hader is a small hamlet in Goodhue county, this state, wherein defendant, organized as a coöperative company, built a cheese factory and started operating the same in September, 1920. A spring-fed rivulet or creek passes near the factory and then northerly and enters plaintiff's 42-acre farm about 1,000 feet below where defendant's drain enters it. The creek divides plaintiff's 20-acre fenced pasture in about two equal parts, thence meanders northerly some 16 miles, emptying into the Cannon river near Welch. In its course other branches or rivulets enter, and it is known as Belle Creek. Plaintiff's little farm has commodious buildings. It is the family home and is used as a dairy farm. Defendant obtains the milk for the factory from farmers living within a radius of about six miles of Hader. It is a growing industry, and an additional vat of about 8,000-pound capacity was

installed about ten years ago. The record gives the impression that the waste from the factory did not in the beginning cause much complaint, especially as long as the patrons on delivery of the milk took back the whey, as they are permitted to do, for hog and chicken feed. In a cheese factory as in a creamery much water with some cleansing ingredient is used. The disposal of the water after so used for cleansing purposes is a problem for every cheese factory and creamery. Where possible it is discharged as sewage in some run or stream. In the instant case a toilet discharges into the drain, but scarcely anyone other than the three employes of defendant makes use thereof. The evidence is clear that the whey is responsible for the sludge and noxious odor that emanates from and pollutes this stream. There is no evidence that the residue from the washings aside from the whey would in any manner pollute the stream or cause offensive odors when it reaches plaintiff's land. The evidence is convincing that when the whey was taken away by the patrons of defendant the nuisance on plaintiff's premises abated. At first, when the capacity of the factory was smaller and most of the whey was taken away by those who brought the milk, there was no complaint of any nuisance on plaintiff's farm. On this appeal defendant challenges (a) the jurisdiction of the court over the subject matter; (b) certain findings are assailed; (c) there is a claim of a prescriptive right to pollute the stream; and (d) that injunctive relief, which would destroy a lawful business to abate a trifling injury to plaintiff, is not warranted.

It is asserted that L. 1927, c. 273 (1 Mason Minn. St. 1927, §§ 5377-1 to 5377-6, inclusive), gave sole jurisdiction to the state board of health to administer and enforce all laws relating to the pollution of waters within the state and repealed by implication, if not in express words, 2 Mason Minn. St. 1927, § 9580, relating to the abatement of nuisances by the district courts. The statutes relating to the state board of health prior to the enactment of this chapter (L. 1927, c. 273) specifically provided that nothing therein should curtail the court's power to administer the usual legal and equitable remedies in case of nuisances or of improper interference with private rights. § 5377. The repeal provision of c. 273 does

not in terms repeal § 5377 of the code nor § 9580 thereof. Nor do we see any such inconsistency between the provisions of L. 1927, c. 273 (1 Mason Minn. St. 1927, §§ 5377-1 to 5377-6) and said § 9580 that the latter must be held repealed by implication. Harris v. Mackintosh, 133 Mass. 228, held a statute similar to § 9580 unaffected by a statute of the same import as said L. 1927, c. 273. There is nothing in our decisions or statutes which requires either the local or the state board of health to take action upon an alleged private nuisance of water pollution before a court may take jurisdiction thereof. We hold that L. 1927, c. 273, does not affect the remedy intrusted to the courts by § 9580.

No finding of fact is challenged except by this assignment: "The court erred in holding and deciding that odor alone could affect rental value of real estate." We think defendant's counsel misinterprets this finding: "That in the pools [of this creek] there settled whey floating or suspended in the water which emitted odors and made the waters offensive but that it was not such as to cause injury or death to cattle." The evidence is replete that the sludge from the rotting whey stuck to the bottom and sides of the creek and the rocks therein, making the water turbid, grayish, and repulsive in appearance in addition to emitting a very offensive odor. There was evidence that the stench from the creek on plaintiff's premises was perceived at a distance of over half a mile if downwind. However, offensive odors may sustain a recovery of damages. Johnson v. City of Fairmont, 188 Minn. 451, 247 N. W. 572.

An assignment of error is directed to the first conclusion of law, reading:

"That the discharge of sewage into said stream is a nuisance, that no prescriptive right to so deposit has been acquired."

Whether considering this as a conclusion of law or a finding of fact, it is of no avail to defendant. A prescriptive right to maintain a nuisance cannot arise unless the nuisance has continued in substantially the same way and with equally injurious results for the entire statutory period. Matthews v. Stillwater G. & E. L. Co. 63 Minn. 493, 65 N. W. 947; Brede v. Minnesota Crushed Stone Co. 143 Minn.

374, 173 N. W. 805, 6 A. L. R. 1092. The evidence here is that the nuisance was not uniform in character or results. There were periods when no discharge of offensive matters was made into the creek, and only during the last few years was there cause for complaint.

The main contention is that the injury to plaintiff being insignificant, only $63 a year in diminished rental value of the farm as found, an injunction should not issue which in effect prevents the operation of a large business of great value to the community. Decisions of high authority are cited and relied on by defendant, *viz.:* Sussex Land & Live Stock Co. v. Midwest Refining Co. (8 Cir.) 294 F. 597; Harrisonville v. W. S. Dickey Clay Mfg. Co. 289 U. S. 334, 53 S. Ct. 602, 77 L. ed. 1208; Meriwether Sand & Gravel Co. v. State, 181 Ark. 216, 26 S. W. (2d) 57; Perry v. Howe Coop. Creamery Co. 125 Iowa, 415, 101 N. W. 150; Monroe Carp Pond Co. v. River Raisin Paper Co. 240 Mich. 279, 215 N. W. 325; McCann v. Chasm Power Co. 211 N. Y. 301, 105 N. E. 416. In respect to these cases it is to be observed that the Sussex case involved injury to plaintiff's ranch or pasture lands through the escape of oil from the lands of defendant where it with proper care was extracting and refining extensive petroleum deposits. The court found that when the oil was exhausted the injury to plaintiff's lands would abate, and awarded damages for all past injury suffered and for such injury as would thereafter come until the oil was exhausted on defendant's land, but refused an injunction. It does not appear that the injury extended to habitation, but simply to the stock-grazing quality of the ranch. There was more complaint of the trespass than of any offensive nuisance. The Harrisonville case was one where defendant, a city of 2,000 inhabitants, had its only sewer outlet into a small creek, which thereafter passed through a tract of plaintiff's land devoted solely to pasturage. It appeared that the city was not financially able to install an additional unit costing about $25,000 for the treatment of the sewage. The rental value of the land was $500 for five years. The Supreme Court recognized plaintiff's right to an injunction, but considered full redress could be had by the payment of the rental value during the con-

tinuance of the pollution and reversed the injunction awarded. The Meriwether case sustains the right of plaintiff herein to injunctive relief. The other cases above cited may be distinguished from the facts in the one at bar. Defendant insists that this court is committed to the doctrine that injunctive relief will not be granted to suppress a nuisance where the injury suffered from its continuance is trifling, and the offending party's business will be totally destroyed or very extensively damaged by its abatement, and points to Roukovina v. Island Farm Creamery Co. 160 Minn. 335, 200 N. W. 350, 38 A. L. R. 1502; Village of Wadena v. Folkestad, 194 Minn. 146, 260 N. W. 221. In the Roukovina case the nuisance sought to be enjoined was the noise and disturbance created in a village at unreasonable hours by the business of defendant, a creamery. The nuisance was held properly abated insofar as the findings of fact warranted. In the Wadena case it was held that the evidence did not establish the defendant's depot to be a nuisance. In both cases the well known principle is recognized that courts in the use of the injunctive remedy will avoid as far as possible interfering with a legitimate business or lawful use. In respect to the right of a riparian owner to have a stream flowing through his land in its natural purity, he as well as those above and below are governed by the rule of reasonable use. See 27 R. C. L. p. 1216, § 133. It appears to us that the findings and the evidence unquestionably warrant the issuing of the injunction restraining defendant from discharging the whey into the creek. The following cases may be mentioned as fully sustaining the proposition that this whey became a putrid mass when it was cast upon plaintiff's farm and constituted both a continuing nuisance and a repeated trespass, and hence the court should grant injunctive relief. Heller v. American Range Corp. 182 Minn. 286, 234 N. W. 316; Johnson v. City of Fairmont and Meriwether Sand & Gravel Co. v. State, *supra;* Weston Paper Co. v. Pope, 155 Ind. 394, 57 N. E. 719, 56 L. R. A. 899; Baltimore v. Warren Mfg. Co. 59 Md. 96; Whalen v. Union Bag & Paper Co. 208 N. Y. 1, 101 N. E. 805; Trevett v. Prison Assn. of Virginia, 98 Va. 332, 36 S. E. 373, 50 L. R. A. 564, 81 A. S. R. 727; Behnisch v. Cedarburg Dairy Co. 180 Wis. 34, 192 N. W. 447.

There are two conclusions of law, one declaring the discharge of sewage into the creek a nuisance (I) and the other declaring the discharge of whey into the same a nuisance (II). It appears that cheese factories and creameries use much water for daily cleansing of utensils and premises. Apparently the water so used comes from a well on defendant's premises. A cleanser or sterilizer is used with the water. An engine is used to operate the machinery employed. A drain in the engine room joins a drain from the factory proper, which carries the discarded whey and water used for cleansing to the creek. There is no evidence that any ingredient of the drain other than the whey materially affects either the natural appearance or odor of the stream. Plaintiff made no use of the water for household purposes. Between the place where defendant's drain emptied into the creek and where it enters plaintiff's farm it touches the lands of three other occupiers with barnyards and hogpens draining toward the creek. There is no evidence that these owners make unreasonable use of the stream, but it is self-evident that the creek does not reach plaintiff's land in its natural purity. It appears to us that the conclusion of law declaring a nuisance any other discharge into the creek than the discharge of the whey went further than justifiable under all the conditions. Directly discharging a toilet into a stream of this character, though only cattle use it for drinking purposes, is perhaps so improper that it should be enjoined, especially as it would be no great expense for defendant to provide a septic tank for the toilet. However, the discharge of whey upon plaintiff's premises and interfering by its stench and disagreeable appearance with plaintiff's proper enjoyment of her home and property justified the court in enjoining that nuisance.

The case is remanded to the court below with direction to amend the order for judgment in conformity herewith, and, as so amended, the order denying a new trial will stand affirmed, no statutory costs to be taxed.