HENRY HERRMANN v. J. E. LARSON.[1]

January 2, 1943.

No. 33,191.

[1]Reported in 7 N. W. (2d) 330.

*J. J.* and *J. A. Fahey,* for appellant.
*W. F.* and *W. B. Odell,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

In this action to enjoin an alleged nuisance and for damages, the trial court made findings of fact and conclusions of law favorable to defendant. Plaintiff appeals from an order denying his alternative motion for amended findings or a new trial.

Plaintiff owns and operates an 88-acre farm in Carver county. His dwelling house is located on the south 58 acres and his barn and other buildings on the north 30 acres. A public highway running east and west intersects the two tracts. When plaintiff purchased the farm in 1926, three or four acres in the northeast part of the north thirty tract were covered with willows. In 1929 he cleared the willows and later tiled the ground and put in crops. In 1932 he seeded it and has since used it as part of his pasture.

Defendant owns and operates a creamery located on the southwest corner of the 30-acre tract which he purchased from plaintiff in 1926. He has operated a creamery at substantially the same site since 1899 or 1900, when he leased the land from plaintiff's predecessor in ownership "for as long as a Creamery or Cheese Factory is maintained and operated on said premises." After purchasing the parcel of ground from plaintiff in 1926, he erected his present creamery thereon. From 1899 to 1931 defendant confined his operations to making and shipping butter and shipping sweet cream. In 1931 he began bottling milk for shipment and now receives about 10,000 pounds of raw milk and 1,000 pounds of cream daily, all of which is bottled except the sour cream, which is made into butter. During the first years of defendant's creamery business water was supplied from a two-inch tubular well, which gave out about 1920. It is now furnished by one four-inch and two three-inch wells. Water is used for washing about 6,000 bottles

daily, cleaning the churns, scrubbing and cleaning the creamery, and in the washroom and lavatory. Defendant's home, located nearby, has a septic tank into which the toilet empties, and the overflow therefrom connects with the creamery drain. The creamery is also equipped with a toilet and washroom, which connected with the creamery drain until after the commencement of this action, when defendant installed a septic tank, into which the waste now empties. The overflow from this tank likewise goes into the drain.

All the drainage from the creamery and from defendant's dwelling house empties into an eight-inch sewer pipe which extends about 50 feet north on defendant's land and thence northeasterly over plaintiff's land a distance of about 600 feet. The pipe ends on plaintiff's property and empties into a "pot hole." Three or four acres around this so-called "pot hole" are claimed to be submerged in the waste water from defendant's creamery, the destruction of the vegetation thereabout and the foul odors emanating therefrom constituting the alleged nuisance.

It appears that in 1931 plaintiff laid a 10-inch tile north from his building site along the east edge of his 30-acre tract ending about 100 feet from his north line. The water runs from there through a culvert and into an open ditch across the road. Shortly thereafter, defendant, at his own expense but with plaintiff's consent, extended the tile into which his creamery drains a distance of about 220 feet east to plaintiff's 10-inch tile and there connected it. The rest of the drainage system from the creamery was upon the land when plaintiff purchased it in 1926. Some months after defendant extended his tile to connect with plaintiff's, an adjoining neighbor complained to both plaintiff and defendant, whereupon about 80 feet of it was removed. There is a dispute in the testimony as to whether it was removed by plaintiff or by defendant or by their joint action. Plaintiff testified that it was taken up by defendant's son after he and Mr. Eggers, the complaining neighbor, went to see defendant about it, and Eggers told defendant that about 80 feet of the tile would have to be taken out.

On cross-examination, defendant testified that Eggers was the person who asked him to take up the tile and that plaintiff was not present during the conversation and did not request him to do it. Asked whether his son took up the tile, defendant answered, "Well, I will tell you, to be honest I cannot tell, but I don't think so." He further testified that he believed plaintiff took it out. We have referred to this testimony because of its relation to a point later to be considered.

Plaintiff claims that ever since defendant established his bottling works in 1931 large quantities of water containing obnoxious substances pour onto his land by way of defendant's drain and spread over about four acres of his pasture, killing the vegetation and creating noisome odors; that flies are attracted to and breed in the slush; that his cattle tramp in the mud and filth, which accumulates on their legs and bodies so that they have to be washed before they can be milked; and that the cows carry the stench with them up into plaintiff's barnyard.

Defendant admits the extent of his operations and that the water and refuse therefrom flows upon plaintiff's land. In defense he asserts (1) a prescriptive right to maintain the drain; (2) an implied grant of an easement of drainage over and upon plaintiff's land by virtue of the lease from plaintiff's predecessor in title and the deed from plaintiff; (3) a right to drain arising out of his agreement with plaintiff in 1931 whereby plaintiff permitted him to extend his tile and connect it with plaintiff's drain.

The trial court adopted defendant's view and found: That plaintiff knew his predecessors in title had acquiesced in the use of the land in question for drainage purposes by defendant for many years; that he knew defendant's creamery waste had to be discharged on the adjoining property at the time he purchased the farm; that there was no other available place for drainage except upon plaintiff's land; and that plaintiff, knowing these facts, permitted defendant to build a new creamery in 1926 involving appreciable expense to defendant. It was further found that plaintiff suffered no damage by reason of the operation of the

creamery and the discharge therefrom other than would ordinarily and normally follow from the exercise by defendant of the rights acquired by him under his lease and deed; that no greater burden of water or waste was added after the commencement of the bottling operations in 1931; that in 1931 plaintiff and defendant agreed that defendant might continue and extend his drain to connect with plaintiff's tile; that pursuant to such agreement defendant at considerable expense extended his tile so as to connect with plaintiff's; that such connection did not cause damage to any adjoining landowner; that thereafter on plaintiff's demand 80 feet of the defendant's tile were removed, which permitted the creamery waste to discharge again upon plaintiff's land. The court made the following conclusions of law:

"1. That defendant is entitled to the judgment and decree of this court that the defendant's drainage system as it now exists on plaintiff's parcel *b* [the 30-acre tract] be connected with plaintiff's tile drain on said parcel by drain tiles laid along the line, or as nearly as may be along the line, of the tile laid and removed in 1931 as found in the foregoing findings of fact, the line thereof being marked on the ground by a trench left by the removal of said tile, and that said connecting tile be laid jointly by the parties hereto or, if plaintiff refuses to participate therein, that they be laid by the defendant and that the cost and expense thereof be borne equally by the parties hereto, and, that in the latter event the cost and expense be determined by the court on motion subsequent to the entry of judgment.

"2. That defendant have and recover his costs and disbursements taxed and allowed as by law provided."

Judgment was ordered accordingly.

The questions presented are (1) whether the maintenance of defendant's drainage system constitutes a nuisance, and (2) if so, is plaintiff estopped from maintaining this action by reason of (a) a prescriptive right or an implied grant to defendant to drain the waste from his creamery onto plaintiff's land, or (b) an agree-

ment entered into between the parties in 1931 whereby plaintiff consented to defendant's drainage of water and waste into a tile thereupon laid by defendant connecting with plaintiff's tile running along the east line of his 30-acre parcel.

■ Minn. St. 1941, § 561.01 (Mason St. 1927, § 9580), defines a nuisance as "anything which is injurious to health, or indecent or so offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." The evidence is compelling that the substances which flow from defendant's creamery onto plaintiff's land are of such a nature as to be both "offensive to the senses," and "an obstruction to the free use of property," so as to interfere with the comfortable enjoyment of plaintiff's life and property. On the record here presented, the case is within the rule laid down in such cases as Batcher v. City of Staples, 120 Minn. 86, 139 N. W. 140; Joyce v. Village of Janesville, 132 Minn. 121, 155 N. W. 1067, L. R. A. 1916D, 426; Hughes v. Village of Nashwauk, 177 Minn. 547, 225 N. W. 898; Heller v. American Range Corp. 182 Minn. 286, 234 N. W. 316; Johnson v. City of Fairmont, 188 Minn. 451, 247 N. W. 572; Satren v. Hader Co-op. Cheese Factory, 202 Minn. 553, 279 N. W. 361; Price v. Oakfield Highland Creamery Co. 87 Wis. 536, 58 N. W. 1039, 24 L. R. A. 333; Mitchell v. Flynn Dairy Co. 172 Iowa 582, 151 N. W. 434, 154 N. W. 878; Behnisch v. Cedarburg Dairy Co. 180 Wis. 34, 192 N. W. 447; Kobielski v. Belle Isle East Side Creamery Co. 222 Mich. 656, 193 N. W. 214, 31 A. L. R. 183. The condition as to obnoxious substances deposited upon plaintiff's land and odors emanating therefrom was testified to by plaintiff and several witnesses in his behalf. There was no denial by defendant that such conditions existed and no finding by the court that they did not exist. The court found that plaintiff's land herein involved is low and that "in years of ordinary rainfall a considerable portion of said low land is unfit for any purpose and is worthless." The court also found that there was "no substantial increase in the quantity of water drained on to said parcel *b* [the tract here involved] after the installation of

said bottling plant." We do not believe that the evidence sustains either of these findings. The land upon which the alleged nuisance is created is and has been used by plaintiff as a part of his pasture for many years. At least a part of it has been tiled. In the operation of an 88-acre farm every available acre is needed. The testimony is such that it required a finding to the effect that the burden upon plaintiff's land was materially increased subsequent to the establishment by defendant of his bottling operations in 1931. Such being the case, plaintiff made a showing which established a nuisance entitling him to relief unless defendant is absolved by reason of the defenses now to be considered.

■ Defendant contends and the court so found that he acquired a prescriptive right to drain the waste from his creamery upon plaintiff's land. He bases that right upon its exercise for a long period of time and upon an implied grant arising from a lease with plaintiff's predecessor and a deed procured from plaintiff in 1926 prior to the erection of his present creamery. We need not discuss at length the requisites of an implied grant or a prescriptive right to maintain a nuisance. A grantee of an easement by implication may not materially increase the burden upon the servient estate. 17 Am. Jur., Easements, p. 996, § 98. "A prescriptive right to maintain a nuisance cannot arise unless the nuisance has continued in substantially the same way and with equally injurious results for the entire statutory period." Matthews v. Stillwater G. & E. L. Co. 63 Minn. 493, 65 N. W. 947; Brede v. Minnesota C. S. Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; Satren v. Hader Co-op. Cheese Factory, 202 Minn. 553, 279 N. W. 361, *supra*. The evidence here is compelling that the burden cast upon plaintiff's land was substantially greater after the establishment of defendant's bottling works in 1931. There was some testimony to the effect that it was ten times as great. Such being the case, neither the doctrine of prescriptive right nor implied grant relied upon by defendant is of avail in this case.

■ The trial court found that in 1931 defendant with plaintiff's consent extended his drain to connect with one on plaintiff's land

and that thereafter on plaintiff's demand 80 feet in length of the tile so laid by defendant was removed; that if the tile so removed were relaid so as to connect the tile from defendant's creamery with plaintiff's tile line, thereby reëstablishing the connection with defendant's tile line that was made in 1931, little, if any, damage, would be done to plaintiff's land, or to the land of any adjoining landowner, by defendant's operation of his plant and the discharge of waste therefrom. Based in part upon these findings, the court ordered the restoration of the 80 feet of tile so removed. We do not believe that the evidence sustains these findings or permits the conclusions drawn therefrom. The action is not one for specific performance of a contract nor does defendant seek that relief in his answer. Furthermore, the evidence is quite conclusive that defendant caused the tile in question to be removed because of the complaint of Mr. Eggers, an adjoining landowner. In any event, whatever right he acquired in 1931 to connect with plaintiff's tile he abandoned by his own act in either causing it to be removed or acquiescing in its removal. He is not now in a position to assert such a right as a defense to this action. There are cases to the effect that when pursuant to a verbal contract the owners of adjoining tracts of land coöperate in the construction of a ditch or drain the equitable doctrine of estoppel will prevent one of them from interfering with it to the detriment of the other. Munsch v. Stelter, 109 Minn. 403, 124 N. W. 14, 25 L.R.A.(N.S.) 727, 134 A. S. R. 785; Baldwin v. Fisher, 110 Minn. 186, 124 N. W. 1094; Schuette v. Sutter, 128 Minn. 150, 150 N. W. 622; Stoering v. Swanson, 139 Minn. 115, 165 N. W. 875. However, the facts in this case do not bring it within the doctrine of those cases.

It is apparent that the trial court earnestly endeavored to work out an equitable arrangement between these contending owners. However, we cannot overlook our prior decisions in attempting to reach the same result. In a case such as this the rights of habitation do not have to yield to the rights of business. Brede v. Minnesota C. S. Co. 143 Minn. 374, 173 N. W. 805, 6 A. L. R. 1092; Heller v. American Range Corp. *supra.* There has been no show-

54

ing made here of the impossibility of disposing of the objectionable matter except over plaintiff's premises so as to invoke the doctrine of Harrisonville v. W. S. Dickey Clay Co. 289 U. S. 334, 53 S. Ct. 602, 77 L. ed. 1208, or of treating it or otherwise relieving the burden upon plaintiff's property as in such cases as Roukovina v. Island Farm Creamery Co. 160 Minn. 335, 200 N. W. 350, 38 A. L. R. 1502; Satren v. Hader Co-op. Cheese Factory, 202 Minn. 553, 279 N. W. 361.

The order appealed from is reversed and a new trial granted.

