# CHANNEL 10, INCORPORATED, AND ANOTHER v. INDEPENDENT SCHOOL DISTRICT NO. 709, ST. LOUIS COUNTY.

215 N. W. 2d 814.

February 15, 1974—No. 44027.

*Hammer, Halverson, Watters & Bye, Gene W. Halverson,* and *Robert C. Maki,* for appellants.

*Robert A. Hughes,* for respondent.

KELLY, JUSTICE.

This action was brought by Channel 10, Inc., a Duluth television station, and Richard E. Gottschald, its news director, as resident taxpayers within defendant school district, seeking a permanent injunction to restrain defendant's school board from holding meetings in violation of the Minnesota Open Meeting Law, Minn. St. 1971, § 471.705.[1] The district court made the following conclusions of law and order for judgment:

"1. That as a general rule, any private or secret meetings or assemblages of the Duluth School Board, when a majority of the School Board members are present, when the topics for discussion and eventual decision are such that would otherwise arise at the regular School Board meetings, are a violation of the Minnesota Public Meetings Statute, M. S. 471.705. The nomenclature of said meetings is immaterial, the topics and purpose of said

---

[1] Minn. St. 1971, § 471.705, in effect at the time of trial, provides: "Except as otherwise expressly provided by law, all meetings, including executive sessions, of the governing body of any school district however organized, unorganized territory, county, city, village, town or borough and of any board, department or commission thereof, shall be open to the public. The votes of the members of such governing body, board, department or commission on any action taken in a meeting herein required to be open to the public shall be recorded in a journal kept for that purpose, which journal shall be open to the public. The vote of each member shall be recorded on each appropriation of money, except for payments of judgments, claims and amounts fixed by statute."

meetings being the controlling factors.

"2. That there are, however, certain exceptions within the true meaning and intent of the statute in which the public interest dictates that the public and the news media be barred from attendance.

"3. That although the statutes are silent and do not expressly require advance notice to the public of School Board meetings, these statutory provisions impose by implication a requirement of advance notice to the public or at least to the news media of all School Board meetings that are not closed. This general rule of construction that every statute is understood to contain by implication if not by its express terms all such provisions as may be necessary to effectuate its object and purpose dictates the following conclusions:

"The Duluth School Board for Independent School District No. 709 is hereby permanently enjoined from holding any secret or closed meetings not open to the public or the news media, whatever the designation of such meeting, except:

A. Committee meetings of the Board where less than a quorum of the Board is present.

B. Hearings for the discharge, suspension, or termination of employment of tenure teachers if so requested by the teacher, pursuant to M. S. 125.17, Subd. 7.

C. Meetings involving the personnel evaluation of individual employees of the School District or the consideration of charges against them.

D. Meetings for the purpose of interviewing prospective employees for administrative or other sensitive positions.

E. Meetings with its attorney or attorneys to discuss pending litigation by reason of the confidentiality thereof.

F. Meetings of the Board with its labor negotiators to discuss proposals relating to terms and conditions of employment and instructions to its negotiators as to their authority. This does not extend to any meeting involving the approval of any final negotiated agreement.

G. Meetings for the consideration of selection of any site for school purposes.[2]

H. Meetings at which communications are considered made to the Board in official confidence by other public agencies or the School District staff where the disclosure of such information to the public is forbidden by law.

I. Social gatherings at which no School Board business is conducted.

"4. The Duluth School Board is hereby also permanently enjoined from holding any meeting open to the public without giving notice to the local news media in sufficient time to enable them to attend.

"5. The School Board is also permanently enjoined from failing to follow the mandate of M. S. 471.705 requiring the recording in a journal kept for that purpose the votes of the members of such School Board on any action taken in a meeting herein required to be open to the public.

"6. The School Board is also permanently enjoined from discussing or considering any matter proper to a public meeting at any closed meeting allowed by the terms of this Order.

"7. The attached Memorandum is expressly made a part of the Order hereof."

Plaintiffs appeal from that part of the judgment based upon this order which allows exceptions to the injunction, challenging the allowance of these exceptions to the open meeting requirement. They assert also that certain bylaws adopted by the school board and directly repugnant to the open meeting law should have been declared void by the trial court.

The bylaws of defendant school board provide that in addition to regularly scheduled board meetings, "Committee of the Whole" meetings are to be held monthly to discuss matters not appropriate for public announcement until fully developed, although formal confirmation of such matters must be made sub-

---

[2] Exception G was later deleted on plaintiffs' motion.

sequently at an open meeting. The bylaws also provide for special meetings which may be called by the board chairman at any time or place he designates. The bylaws further permit "Executive Sessions" for discussion of entrusted information relating to personnel or other sensitive subjects, with action taken at such sessions to be confirmed at later open meetings. In the summer of 1971, prior to the regular monthly board meetings, the board chairman began holding "Agenda Meetings" where at least a majority of the board discussed issues, resolved differences, and arrived at conclusions on some of the subjects to be considered at the regular meetings.

The plaintiffs detail a number of instances in which meetings were held, at some places other than at the regular meeting room of the board, without prior notice to the public.[3] These instances of allegedly improper board meetings are, in substance, as follows: (1) On June 6, 1968, the board met at a closed meeting without prior notice to the public, although inquiry had been made by plaintiff Gottschald as to when the board would meet on the subject, and formally adopted a factfinding panel's report relating to teachers' salary increases. (2) In September 1969, the school board met secretly and agreed upon a proposed budget and tax levy for the upcoming school year. (3) On February 10, 1970, a majority (six of nine) of the board members held informal discussions in a coffee room immediately before a previously announced meeting in the regular meeting room. Presumably they discussed the subject matter of the announced meeting, which was being held to consider the future employment of a human rights director. (4) An unannounced gathering of eight out of nine members of the board was held in June 1971 in the board chairman's home, at which time discussion and expression of views occurred on at least two topics of major interest—construction of a walkway over a highway to a new high

---

[3] Much of the evidence is contained in depositions and was accepted as evidence pursuant to stipulation of the parties and agreement by the court.

school and offering a new contract to the superintendent of schools—and an informal vote was taken on the latter topic. (5) On June 29, 1971, a majority met in the regular meeting room to discuss the highway overpass. (6) At 5:30 p. m. on August 9, 1971, prior to the regularly scheduled meeting of August 10, 1971, the board held a session not announced to the public and discussed, among other things, rural busing, the closing of an elementary school, a special education program at a new high school, and the present lawsuit. (7) At an informal school board session on August 24, 1971, without notice to the public, a proposed budget was presented to the school board. (8) On October 6, 1971, a majority of the board met at a Duluth nightclub and voted not to rehire the superintendent of schools, which decision was to be conveyed to him on October 11. (9) On October 11, 1971, the board held a closed meeting, expressly barring the press. The chairman stated after the meeting that its purpose was to discuss "personnel matters." (10) A realtor was retained, apparently at a closed and unannounced meeting, to act as agent for acquiring a site for a new high school prior to any public and official action by the board to hire him.

The following questions are presented on this appeal:

1. Whether plaintiffs had standing to maintain an action for injunctive relief for alleged violations of Minn. St. 1971, § 471.705?

2. Was the trial court in error in decreeing exceptions to the general injunctive relief ordered, especially those exceptions which were not raised or litigated in the action?

3. Should the trial court have expressly held void any bylaws of the school board which conflict with the open meeting law?

■ *The Issue of Plaintiffs' Standing*

Defendant through a notice of review raised the issue of plaintiffs' standing as citizens and taxpayers of the school district to challenge the school board's meeting policies. Defendant made the same contention before the trial court in its answer and

in a motion for dismissal at the close of the evidence. The court found, however, that both Channel 10 and its news director had an interest differing from the interest of the general public in the accessibility of school board meetings because plaintiffs had an economic stake in seeking and developing news coverage. The court took judicial notice of this despite the lack of direct evidence of specific loss or damage.

Citizen standing to maintain actions in the public interest without express statutory authority has generally been disallowed absent some damage or injury to the individual bringing the action which is special or peculiar and different from damage or injury sustained by the general public. Caton v. Board of Education, 213 Minn. 165, 6 N. W. 2d 266 (1942); 42 Am. Jur. 2d, Injunctions, § 179; 43 C. J. S., Injunctions, § 22. Rights of a public nature are to be enforced by public authority rather than by individual citizens so as to avoid multiplicity of suits. Slezak v. Ousdigian, 260 Minn. 303, 110 N. W. 2d 1 (1961); Green v. Independent Consol. School Dist. No. 1, 256 Minn. 185, 98 N. W. 2d 86 (1959). One recognized exception to this rule is an action brought by a taxpayer to challenge an illegal expenditure. Green v. Independent Consol. School Dist. No. 1, *supra;* Phillips v. Brandt, 231 Minn. 423, 43 N. W. 2d 285 (1950).

In a different context involving the Federal Administrative Procedure Act, it has been recognized in a number of recent United States Supreme Court decisions that the interests of the individual citizen bringing a suit do not necessarily have to be economic interests. The individual need only have a sufficient stake in the matter, whether economic or non-economic, to assure an adversary proceeding and to be among those injured. See, Association of Data Processing Service Organizations, Inc. v. Camp, 397 U. S. 150, 90 S. Ct. 827, 25 L. ed. 2d 184 (1970); Barlow v. Collins, 397 U. S. 159, 90 S. Ct. 832, 25 L. ed. 2d 192 (1970); Sierra Club v. Morton, 405 U. S. 727, 92 S. Ct. 1361, 31 L. ed. 2d 636 (1972).

These cases are not particularly helpful in analyzing standing

here, however, because § 10 of the Federal Administrative Procedure Act authorizes suit by a person "adversely affected or aggrieved," 5 USCA, § 702, whereas Minn. St. 1971, § 471.705, (the Minnesota Open Meeting Law) gives no express authorization to bring suit. The decisions do show that the United States Supreme Court has significantly removed many prior limitations on standing. Without statutory authority to maintain a suit, the individual must show injury to some interest, economic or otherwise, which differs from injury to the interests of other citizens generally. In Quast v. Knutson, 276 Minn. 340, 150 N. W. 2d 199 (1967) and in Lindahl v. Independent School Dist. No. 306, 270 Minn. 164, 133 N. W. 2d 23 (1965), we allowed individuals to seek relief under § 471.705, but in these cases the question of standing was neither raised nor passed on.

The Minnesota Open Meeting Law was obviously designed to assure the public's right to be informed. All meetings of the governing body of a school district, in the language of the statute, "shall be open to the public." There is nothing in the statute in any way indicating that the object of the statute was to ensure that only persons with a particular injury or those having a special interest differing from that of the general public were to have any preferred status. The plaintiffs are within the group of persons whom this statute was designed to assure that meetings of school boards would be open to the public. Thus, a right to attend open public meetings having been given to the general public, impliedly they should have standing to enforce that right.

In addition to the implication from the statute that any member of the public should have standing, the trial court found that the news media have an interest in reporting news which is different from the public's interest in having meetings of public bodies open to all citizens. However correct that observation may be, we think that the basic purpose of the law was to have an informed public. The only realistic and practical means of accomplishing that end is to have open meetings with notice thereof to the news media. The law was not passed for the direct benefit

of the media but rather for that of the public. Similarly, the United States Supreme Court has stated with reference to the constitutional guarantees of speech and the press:

"Those guarantees are not for the benefit of the press so much as for the benefit of all of us. A broadly defined freedom of the press assures the maintenance of our political system and an open society." Time, Inc. v. Hill, 385 U. S. 374, 389, 87 S. Ct. 534, 543, 17 L. ed. 2d 456, 468 (1967).

The trend toward broadening standing rights has usually occurred where the courts have been assured that the issues will be vigorously and adequately presented. In this context, the trial court's finding that Channel 10, Inc., has an economic interest in the availability of news for dissemination at a profit does in part at least assure that the issues here were vigorously and adequately presented.

We sustain the trial court's decision that these plaintiffs had standing, basing our holding on the implications from the statute, i.e., the right of the people to be informed in a practical way by the news media, and in keeping with the trend of broadening the standing rights of litigants, particularly where the facts and issues will be vigorously, fairly, and adequately presented in an adversary setting.

■ *Injunctive Relief and Exceptions*

There were no penal provisions in the open meeting law at the time this case was decided in the lower court. However, Minn. St. 645.241 makes it a misdemeanor to perform any act prohibited by statute where no penalty for that violation is imposed in any statute. The defendant contended in the court below that plaintiffs failed to pursue the remedy afforded by § 645.241 and were therefore not entitled to any equitable relief.[4] The open meeting law did not authorize the courts to issue injunctions or

---

[4] As a general rule, an injunction will not be granted where there is an adequate remedy at law. 9A Dunnell, Dig. (3 ed.) § 4472.

writs of mandamus as some states do. See, e. g., Iowa Code Ann. § 28A.7 (1967).

No question was directly raised on this appeal as to the adequacy of the remedy provided by Minn. St. 645.241. The trial court did point out that it might have dismissed this action in its discretion on the grounds propounded by the defendant but did not because using its equitable powers to resolve the dispute was in the public interest. The court's rationale is contained in its memorandum:

"The problem here is not a weighing of interests between the School Board and the news media as to the extent of disclosure to the public of the business of the School Board, but rather it is an attempt to determine fairly where the public interest lies between these conflicting positions. The news media wants full and complete access to all meetings of the Board, while the School Board feels that in certain areas, it is in the public interest that certain deliberations and information be kept confidential. In view thereof, it may be presumed that absent a selfish or profit motive on the part of the news media, that both parties are in agreement as to their desires to serve the public interest.

"The Court could well have, in its discretion, dismissed this lawsuit on the grounds propounded by defendant, but cognizant of the fact that this action is of an equitable nature and that it is in the public interest that the dispute be resolved as far as possible, the Court has attempted to look at the real issues involved and arrive at some equitable and fair guide lines that hopefully will direct the parties intelligently and practically in the future.

"It is obvious that the Duluth School Board perform an unselfish and time-consuming service to the citizens of Duluth. They act without pay and devote hours each month to time-consuming Board of Education business. It can, therefore, be presumed that they have and will continue to act in good faith and in a manner that they sincerely believe is in the public interest. Therefore, the actions which this Court seeks to enjoin of the School Board are not to infer a denunciation or an accusa-

tion of bad faith on the part of the School Board but rather instruction to them of the course to pursue in order that the law and the public interest may be fulfilled. The Court necessarily must recognize that the statute involved is specific to some degree as to its intent and purpose but is general as to the means of enforcing or carrying out its provisions. Consequently, it must be enforced practically and realistically to best serve the public interest."

Similarly, although the law did not require any notice of meetings called by the Board, the court again used its equity power by requiring that the Board give notice to the local news media of any meeting open to the public. The trial court appropriately commented in its memorandum on this item:

"M. S. 471.705 is silent as to any requirement of notice to the public or news media. The Court, however, agrees with the language of the Minnesota Attorney General addressed to the Faribault City Attorney, dated January 11, 1972, to the effect that an open meeting called in secrecy or suddenly without notice is in effect a closed meeting, and without such notice, the letter but not the spirit of the law would be observed."

The trial court, having decided to use an equitable remedy not directed nor even authorized by the open meeting law, could also decide that it was within its discretion to determine the extent of the injunctive relief to be granted, provided such limitation was not contrary to the plain policy and purpose of that law. The open meeting law did not provide that certain meetings could be closed if it was in the public interest to do so. The court nonetheless looked to the public interest as an equitable and fair guideline in fashioning the relief granted, explaining:

"In conclusion, a few words concerning the bases of the Court's Order to restrict some of the Board's meetings from the public may be helpful. Committee meetings of less than a quorum, hearings on discharge of tenure teachers, and consideration of communications confidential by law are self-evident and re-

quire no explanation as to their being closed meetings. Inasmuch as the Board of Education in certain respects are adversaries to other interests in some of their considerations, it must be obvious that the Board should have the advantage afforded their adversaries in the matter of confidential discussion with their attorneys over litigation, conversations and discussions with the negotiators in labor disputes."

Plaintiffs complain that the trial court after enjoining secret meetings engrafted exceptions upon the open meeting law to protect what it considered the public interest. The open meeting law was devoid of any authorization or directions for injunctive relief, and the court engrafted an equitable remedy thereon, to which it in turn engrafted exceptions based on what it considered to be equitable principles. The court also engrafted a requirement that notice of certain meetings be given to the local news media. We think engraftments per se are not inappropriate in this case, but also recognize that where the courts attempt to aid in enforcing legislative enactments, they should do so without changing the policy and purposes expressed by the legislature. Thus, the trial court should not have used the public interest as a factor in determining what acts should be enjoined since that determination should be a policy decision for the legislature. The wisdom of the open meeting law may be debated in the public arena but our role is to enforce the statute according to its terms. If it doesn't work in the public interest, the legislature is the branch of government that should change it.

Whether or not injunctive relief should have been granted at all in this case may be open to some question. We assume that the open meeting law was intended to be something more than a mere statement of policy and that at a minimum the legislative branch would intend that the salient and clear-cut features of the law be enforced. At least one case from another state court suggests that closed meetings in violation of an open meeting law can be enjoined without an enabling provision in the statute.

State ex rel. Adams v. Rockwell, 167 Ohio St. 15, 145 N. E. 2d 665 (1957).

We hold that injunctive relief is an appropriate remedy in this case but have misgivings about the extent of the relief and some of the exceptions.

Plaintiffs in effect assert that the trial court should have issued its broad order enjoining the defendants from violating the open meeting law without adding the exceptions it did.[5] They further object to some of the exceptions on the ground that they concern issues which were not appropriately raised and litigated. Defendants counter with the argument that if injunctive relief is to be granted, its agents, officers, and board members are entitled to be specifically advised by the court's order with certainty, definiteness, and clarity what conduct is prohibited. Defendants also point out that plaintiffs asked the court to issue a broad order enjoining defendants from violating the open meeting law while presenting evidence only on specific violations but not requesting that only these practices be ceased.

We generally concur with the trial court's decision to enjoin the board from holding secret or closed meetings but are troubled by the exceptions and will discuss them separately.

A.  Committee meetings of the board where less than a quorum of the board is present.

---

[5] In this connection plaintiffs point out: "* * * The clear express language of the statute is not an absolute however, as the legislature provided the exceptions necessary through the clause 'except as otherwise expressly provided for by law.' Additionally, this exception clause demonstrates the legislative care in considering the total statutory scheme applying to school boards and through the use of this clause preventing conflicts and contradictions between this and other statutory provisions. This clause reaffirms the legislative intent: the exceptions found in Minn. St. 125.17, Subd. 7 for tenured teachers; Minn. St. 595.02(5) for official confidences of public officers; certain rules and regulations having the effect of law, e.g. Op. Atty. Gen. 125a-64 December 4, 1972 * * * control the holding of closed meetings and not a court 'providing by law' a list of exceptions."

Plaintiffs contend this exception is redundant as § 471.705 has the provision "[e]xcept as otherwise expressly provided by law" and Minn. St. 123.33, subd. 5, requires a majority of board members for a quorum. It is reasoned then that any committee meeting of less than a quorum is not a meeting of the governing body, so such a meeting is an automatic exception under Minn. St. 1971, § 471.705.[6] It is also asserted that the holding of committee meetings with less than a quorum of the board was not a subject of plaintiff's complaint, is beyond the issues raised and litigated, and should not be decided until appropriately raised in an adversary situation. We agree that if this item was not litigated in the court below it should not be made an exception with any implication that closed meetings of such committees were permitted under the law. For the same reason closed meetings of such committees should not have been prohibited by injunctive relief. Whether this type of meeting is made an exception or the general injunctive relief is limited to meetings of the board at which a quorum is present is purely a matter of semantics and format. The trial court could and should state that the question of the validity of such closed committee meetings was not litigated and that they are neither prohibited nor permitted.

B. Hearings for the discharge, suspension, or termination of employment of tenured teachers, if so requested by the teacher pursuant to Minn. St. 125.17, subd. 7.[7]

The same contention is made here by plaintiffs that this exception is redundant in that it is expressly provided for by Minn. St. 125.17, subd. 7. Plaintiffs also assert in their brief:

"* * * [T]he issue of tenured teachers was not raised or lit-

[6] The Minnesota Open Meeting Law, amended after the trial by L. 1973, c. 680, now includes committees and subcommittees.

[7] Minn. St. 125.17, subd. 7, provides: "All hearings before the school board shall be private or may be public at the decision of the teacher against whom such charges have been filed." Thus, such hearings are not within the purview of § 471.705 unless the teacher requests an open meeting.

igated before the trial court, and if clarification is needed between Minn. Stat. 125.17, Subd. 7 and the open meeting statute that clarification will only be necessary and appropriate when placed before the court by the interested parties in an adversary situation."

The court below should, as with Exception A, point out that because this issue was not litigated, such closed meetings are neither prohibited nor permitted by the court's order and no decision is made as to whether they are or are not prohibited by the open meeting law.

C. Meetings involving the personnel evaluation of individual employees of the school district or the consideration of charges against them.

Plaintiffs apparently make the same objection to this exception if tenured teachers are involved as they did to Exception B. In addition, they point out, with respect to employees other than tenured teachers, that a substantial number of employees are under civil service pursuant to L. 1967, c. 252, and that many other employees are not under civil service or tenure laws. Their main objection to this exception apparently is as stated in their brief:

"As the trial court did not give consideration to the rights of these third party employees, this exception, if necessary, should result from a trial where the issues are appropriately raised and litigated by the parties in interest."

We think that this exception is overbroad and agree that the issues relating to it should be determined in a trial where they are litigated by the parties in interest or at least are contained in the factual setting. Consequently, we hold this exception to be inappropriate.

D. Meetings for the purpose of interviewing prospective employees for administrative or other sensitive positions.

No law for this exception has been cited. This exception is apparently based entirely on the theory that it is in the public

interest that such meetings be closed. The legislature not having made such meetings an exception, we must conclude that it has decided that it is in the public interest that such meetings be open and that this was not an appropriate exception.

E. Meetings with the board's attorney or attorneys to discuss pending litigation by reason of the confidentiality thereof.

The only factual information that the trial court had concerning this exception was that the present lawsuit was discussed at a closed meeting of seven or eight members. Under the circumstances we hesitate to make a precedent-setting decision adopting either the rule, adopted by a majority of the courts, favoring recognition of this exception or the minority rule refusing to recognize it, or possibly some modification of either.

One argument advanced in behalf of recognizing this exception is that attorneys are governed by canons of ethics adopted by the supreme courts of various states and the ethical duties of an attorney as an officer of the court should not be interfered with. Times Publishing Co. v. Williams, 222 So. 2d 470, 475 (Fla. App. 1969). We do not feel that the canons of ethics need be blindly used if that use is purposeless. The confidentiality of conversations and communications between client and attorney is based on the assumption that the client may not disclose everything to his attorney if the information disclosed may be used against him. The results of nondisclosure are patent—the attorney cannot properly advise his client without knowledge of all the facts. An attorney without the facts is in no position to suggest and negotiate settlements in civil cases nor to engage in plea bargaining in criminal cases. Furthermore, it would be difficult for an uninformed attorney to prepare for trial and to try a lawsuit. Obviously, the machinery of justice would be adversely affected if clients were not free to discuss legal matters with their attorneys without fear of disclosure.[8] We fail to see any particular

---

[8] 58 Am. Jur., Witnesses, § 462, states: "The rule prohibiting disclosure of confidential communications made by a client to his attorney is based upon grounds of public policy. When one seeks the professional

purpose in keeping confidential a meeting between the school board and its attorney over matters pertaining to this case, but there may be purposes that would surface in a case with a different factual setting. The real client in this case is not the school board but rather the public. In some instances, the best protection for the public might be a full public disclosure of any conference between a school board and its attorney. Where tort claims against the school district are being discussed by and between the school board and its attorney, disclosure might not be in the best interests of the public nor in the best interests of the administration of justice.

Another basis cited for favoring this exception is the legislative policy underlying the statutory attorney-client privilege. Thus, Minn. St. 595.02(2) provides:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent."

California has an open meeting law somewhat similar to that

advice and assistance of an attorney at law with the view of securing and enforcing his rights, or of defending himself against civil claims or criminal charges, it is necessary that he be able to make a full disclosure of all facts and circumstances that go to substantiate his claim or defense, and the law, by throwing this cloak of protection around communications between attorney and client, encourages the client to make full disclosure of the facts. The rule is not founded on any particular importance which the law attributes to the legal profession or any disposition on the part of the law to afford members of that profession protection. It is a rule founded in the interest of the administration of justice and is intended to enable a client to place unrestricted and unbounded confidence in his attorney in matters affecting his rights and obligations without danger of having disclosures forced from the attorney on the witness stand. Unless the client's disclosures to his attorney are privileged, free administration of justice would be restricted and the ascertainment and enforcement of his rights endangered."

of Minnesota. A California court recognized this exception to its open meeting law in these words:

"The two enactments [the statutory privilege and the open meeting law] are capable of concurrent operation if the lawyer-client privilege is not overblown beyond its true dimensions. As a barrier to testimonial disclosure, the privilege tends to suppress relevant facts, hence is strictly construed. [Citation omitted.] As a barrier against public access to public affairs, it has precisely the same suppressing effect, hence hereto must be strictly construed. As noted earlier, the assurance of private legal consultation is restricted to communications 'in confidence.' Private clients, relatively free of regulation, may set relatively wide limits on confidentiality. Public board members, sworn to uphold the law, may not arbitrarily or unnecessarily inflate confidentiality for the purpose of deflating the spread of the public meeting law. Neither the attorney's presence nor the happenstance of some kind of lawsuit may serve as the pretext for secret consultations whose revelation will not injure the public interest." Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors, 263 Cal. App. 2d 41, 58, 69 Cal. Rptr. 480, 492 (1968).

Arkansas has an open meeting law quite similar to that of Minnesota and has refused to recognize an exception based on the attorney-client relationship. Laman v. McCord, 245 Ark. 401, 432 S. W. 2d 753 (1968). Plaintiffs would have us adopt the minority rule espoused by the Arkansas court, or in the alternative, pass upon this exception "when the case is appropriately raised and argued before the court."

Open meeting laws and their exceptions are a developing field of law and at this stage we are inclined to employ judicial restraint. We think this exception is too broad and that if any exceptions are to be made because of an attorney-client relationship, it should be done on a case-by-case basis or at least in a case with a more detailed factual setting than is presented by this record.

    F.   Meetings of the board with its labor negotiators to discuss proposals relating to terms and conditions of employment and instructions to its negotiators as to their authority. This does not extend to any meeting involving the approval of any final negotiated agreement.

At the time of the trial court's decision in this case there was no express statutory exception of labor negotiations from the open meeting law. We conclude that this was not an exception and is contrary to the policy of the open meeting law.[9]

    G.   Meetings at which communications are considered made to the board in official confidence by other public agencies or the school districts staff where the disclosure of such information to the public is forbidden by law.

The basis for this exception apparently is Minn. St. 595.02(5) which provides:

"Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:

\*   \*   \*   \*   \*

(5) A public officer shall not be allowed to disclose communications made to him in official confidence when the public interest would suffer by the disclosure."

This statute is directed at the competency of witnesses in any civil or criminal action or proceeding. Possibly it discloses an underlying policy of the legislature much the same as a statutory lawyer-client privilege does. It is not claimed here that any of the school board meetings were closed because of any communications made in official confidence when the public interest

---

[9] Minn. St. 179.69, subd. 2, which did not become effective until July 1, 1972, provides: "All negotiations, mediation sessions, and hearings between public employers and public employees or their respective representatives shall be public meetings except when otherwise provided by the director."

would suffer by the disclosure. One of plaintiffs' objections to this exception is that it was not presented in the evidence nor litigated. We concur in this view as we would prefer to pass upon this exception in some case in which there is some claimed communication made in official confidence and the public's interest in nondisclosure is ventilated.

H. Social gatherings at which no school board business is conducted.

The plaintiffs' main objection to this exception is that the board will consider that discussion, debate, and all steps preliminary to voting are not "conducting business." However, the court in its memorandum stated:

"* * * Finally, it would appear that no one would complain at the lack of an invitation for attendance at a strict social get-together of the Board members. The Court is confident that the Board of Education will not use the occasion for the advantage of a so-called closed meeting as a ruse to conduct business which otherwise should be considered only at an open meeting of the Board."

In addition, the court in paragraph 6 of its order permanently enjoined the board from discussing or considering any matter proper to a public meeting at any closed meeting allowed by the court's order. We think the fears of the plaintiffs are groundless, considered in the light of the court's memorandum and order. On the other hand, a "strict social get-together" at which there is no discussion or consideration of "any matter proper to a public meeting" is so obviously not the kind of meeting that is to be prohibited by the open meeting law that it need not have been set forth as an exception.

Now that we have determined that the eight trial court exceptions are not appropriate, should we affirm the remaining parts of the injunction? We think not because fundamental fairness, if not due process, requires that the injunction be so tailored that the defendant knows with some reasonable degree of cer-

tainty what it is restrained from doing.[10] We have set out in substance the subject matter of a number of closed meetings. None of these meetings should have been closed under the open meeting law with the possible exception of that portion of meeting (6) of August 9, 1971, at which the present lawsuit was discussed. The trial court should make findings as to all of the

[10] We did not find a case discussing the scope of injunctive relief in the context of an "open meeting" violation; most cases discussing the subject are nuisance cases. One of the most quoted of these is Florio v. State, 119 So. 2d 305, 310 (Fla. App. 1960) in which the following guidelines were laid down: "An injunctive order should never be broader than is necessary to secure to the injured party, without injustice to the adversary, relief warranted by the circumstances of the particular case. Moore v. City Dry Cleaners & Laundry, Fla. 1949, 41 So. 2d 865; and Seaboard Rendering Co. v. Conlon, 1942, 152 Fla. 723, 12 So. 2d 882. An injunctive order should be adequately particularized, especially where some activities may be permissible and proper. Moore v. City Dry Cleaners & Laundry, supra. Such an order should be confined within reasonable limitations and phrased in such language that it can with definiteness be complied with, and one against whom the order is directed should not be left in doubt as to what he is required to do."

There are two Minnesota cases on this subject. Both deal with nuisance and each holds, without discussing the principle, that an injunction should never go beyond the requirements of the particular case. Brede v. Minnesota Crushed Stone Co. 143 Minn. 374, 173 N. W. 805 (1919); Satren v. Hader Co-op. Cheese Factory, 202 Minn. 553, 279 N. W. 361 (1938). See, 9A Dunnell, Dig. (3 ed.) § 4474a.

Consent decrees in civil antitrust suits are governed by the same general principles. 54 Am. Jur. 2d, Monopolies, § 372 et seq. Rule 65(d), Federal Rules of Civil Procedure, requires that injunctions "shall be specific in terms" and "shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Broad and generalized terms in an antitrust decree are improper. For example, in a suit to restrain violations of the Sherman Act, 28 USCA, §§ 1 and 2, by the owner of a motion picture theater chain, the United States Supreme Court set aside a general injunction against "monopolizing" first- and second-run films, holding that the precise practices found to have violated the Act should be enjoined. Schine Chain Theatres, Inc. v. United States, 334 U. S. 110, 68 S. Ct. 947, 92 L. ed. 1245 (1948).

closed meetings held in violation of the open meeting law and as to the subject matters thereof and enjoin the defendants from holding such meetings in secret.

The trial court need not pass on any exception based on the attorney-client privilege, either by enjoining the board or by concluding that all meetings or portions of meetings devoted solely to discussion between lawyer and the board on pending litigation or other legal matters may be closed meetings.

### ■ *The Bylaws Issue*

Plaintiffs contend that the trial court should have expressly held those bylaws of the school board that are repugnant to the open meeting law void. The court was not asked by plaintiffs for this relief in either their complaint or their motion for amended findings. This court is a court of review and does not ordinarily grant relief which was not requested in the trial court, nor do we see any great need for this relief. Bylaws of a school board, if repugnant to the open meeting law, are of no force or effect anyway.

The open meeting statute has been amended since this case was heard and has a penal provision imposing a civil penalty not to exceed $100 for violation of the statute and forfeiture of office for a specified period of time upon a third violation. L. 1973, c. 680, § 1, subd. 2. In addition, two other changes were made in the open meeting law that may have some effect on the future relief to be granted in this case. First, committee and subcommittees have been added to the entities whose meetings shall be open to the public and, second, the statute as amended will not apply to any board "when exercising quasi-judicial functions involving disciplinary proceedings." L. 1973, c. 680, § 1, subd. 1.

These amendments to the Minnesota Open Meeting Law do not go into effect until May 1, 1974 (L. 1973, c. 680, § 4) and consequently have no effect on this decision. We should point out that they may have an effect in the future since the courts have the inherent power to amend, modify, or vacate an injunction where the circumstances have changed and it is just and equita-

ble to do so. Annotation, 68 A. L. R. 1180; Weaver v. Mississippi & R. River Boom Co. 30 Minn. 477, 16 N. W. 269 (1883); Larson v. Minnesota N. W. Elec. R. Co. 136 Minn. 423, 162 N. W. 523 (1917).

Affirmed in part and reversed in part with directions for further proceedings consistent with this opinion.

MR. CHIEF JUSTICE SHERAN, MR. JUSTICE YETKA, and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.