## MINNESOTA EDUCATION ASSOCIATION, et al., Respondents,

v.

## Kenneth BENNETT, et al., Appellants.

### No. 81–332.

Supreme Court of Minnesota.

July 9, 1982.

Smith, Carpenter, Peterson & Bailey and Ralph T. Smith, Bemidji, for appellants.

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Mark S. Olson, St. Paul, for respondents.

Peterson, Popovich, Knutson & Flynn, Peter S. Popovich and Frances E. Graham, St. Paul, for Minnesota School Boards Ass'n.

Briggs & Morgan and Douglas L. Skor, St. Paul, for Minnesota Ass'n. of School Administrators.

AMDAHL, Chief Justice.

This is an appeal from an order of the Cass County District Court, dated December 23, 1980, finding that appellants violated the Minnesota Open Meeting Law, Minn. Stat. § 471.705 (1980), on two occasions in September 1979, and imposing civil penalties for those violations. The action was commenced by respondents, the Minnesota Education Association (MEA), the Cass Lake Education Association (CLEA), and Jean Volberding, in June 1980. The complaint alleged that appellants, members of the school board in Independent School District No. 115 (Cass Lake), violated the Open Meeting Law on September 27, 1979, when they met with the school board's attorney in Bemidji to discuss pending contract negotiations between the school district and the CLEA. A court trial was held on October 8, 1980. At the close of the evidence, the trial court granted respondents' motion to amend their complaint to allege a second violation of the Open Meeting Law by school board Chairman Kenneth Bennett and Superintendent Donald Heusers that was disclosed during testimony at trial.

In May 1979, negotiations began on a new collective bargaining agreement between the CLEA and the school district. The negotiation committee for the school board consisted of Kenneth Bennett, school board chairman, Sally Adkins, and Butler Gregory, school board members. Superintendent Donald Heusers served as advisor to the school board negotiating committee. During the spring and summer of 1979, the parties met on several occasions without reaching agreement on a new contract. In August or September of 1979, the Bureau of Mediation Services (BMS) was requested to intervene.

On September 20, 1979, the day before the first scheduled mediation session, Superintendent Heusers placed a telephone call to school board Chairman Bennett. Heusers suggested that attorney Ralph Smith be asked to represent the school board, starting with the mediation session the next day. Bennett agreed and authorized Heusers to contact Smith. No public notice of this alleged "meeting" between Bennett and Heusers was given. Neither Heusers nor Bennett discussed the matter with any other members of the school board. On October 19, 1979, Smith was formally hired as the board's negotiator pursuant to a board resolution.

The first mediation session was held on September 21, 1979, at Walker, Minnesota, which is outside the school district. Representatives of the CLEA negotiating committee and the school district's negotiating committee were present at the mediation session. Warren Sandquist, a BMS mediator, was also present. The major unresolved issue at this point in the negotiations was salary. At the close of this mediation session, the school board's negotiation committee informed the mediator that it had reached the limit granted to it by the full board in extending salary increases. The mediator asked the board's negotiating team to meet with the other board members before the next mediation session, which was scheduled for October 11, 1979, to decide whether they could offer greater salary increases. Mediator Sandquist did not state whether this meeting should be open or closed.

On September 27, 1979, appellants traveled to Bemidji, which is outside the boundaries of the school district, to have dinner at a local restaurant. After dinner, the school board members went to Mr. Smith's office, where they were apprised of the status of negotiations and of the impending impasse. During the meeting each board member expressed an opinion on the contract negotiations in general and the salary offer in particular. No notice was given to the public of this meeting, and it was conducted in private. Although the school board made no formal resolution at the September 27 meeting, an apparent consensus emerged that the school board's negotiating team should make an increased salary offer at the next mediation session. The negotiating team did so.

Based on this evidence, the trial court concluded that both the September 20 telephone conversation between Heusers and Bennett and the September 27 meeting of the entire school board in Bemidji violated Minn.Stat. § 471.705, subd. 1 (1980). The court also concluded that the meetings were not "negotiations, mediation sessions, [or] hearings between public employers and public employees" so as to fall within the limited exception to the Open Meeting Law provided in Minn.Stat. § 179.69, subd. 2 (1980). We hold that neither the telephone conversation nor the September 27 meeting of the entire school board was a violation of the Open Meeting Law.

■ Appellants argue that the September 20 telephone conversation between Superintendent Heusers and Chairman Bennett did not violate the Open Meeting Law because a school superintendent is not a member of the school board for purposes of the Open Meeting Law and because the telephone conversation was not a "meeting" within the meaning of Minn.Stat. § 471.705 (1980). We address ourselves only to the first contention.

Minn.Stat. § 471.705, subd. 1 (1980), provides in part that "Except as otherwise provided by statute, all meetings, including executive sessions, of * * * the governing body of any school district * * * shall be open to the public." The law therefore expressly includes school districts within its coverage. Appellants contend, however, that a school superintendent is not a member of the "governing body" of the school district.

Minnesota law provides that the membership of a school board consists of six or seven elected directors "together with such ex officio member as may be provided by law." Minn.Stat. § 123.33, subd. 1 (1980). Minn.Stat. § 123.34, subds. 1 and 9 provide that school superintendents shall be ex officio members of the school board but not entitled to vote therein. Thus, to determine whether a school superintendent is

subject to the restrictions of the Open Meeting Law, we must decide whether an ex officio member of a school board is part of "the *governing* body of [a] school district." [1] Minn.Stat. § 471.705, subd. 1 (1980) (emphasis added).

Respondents argue that the Open Meeting Law does not distinguish between voting and non voting members of the school board. On its face the law does not make such a distinction. However, the phrase "governing body" inherently limits the reach of the law. In *Student Bar Association Board of Governors v. Byrd*, 293 N.C. 594, 239 S.E.2d 415 (1977), the North Carolina Supreme Court was faced with the same language in the North Carolina Open Meetings Law. The issue was whether the statute required law school faculty meetings to be open to the public. The court, in holding that such meetings were not subject to the Open Meetings Law, defined "governing body" as follows:

> In ordinary speech, the "governing body" of an institution, organization or territory means the body which has the ultimate power to determine its policies and control its activities. Such body may delegate to an employee or group of employees authority to make, initially, such decisions, but such employee or group of employees is not the "governing body" so long as his or its determinations are subject to review and reversal by the higher authority, by whose permission such determination is made.

*Id.* at 602, 239 S.E.2d at 421.

Thus, it is the power to decide, as opposed to the right to recommend, that determines whether one is a member of a governing body. Minn.Stat. § 123.34, subd. 9 (1980), sets forth the duties of the superintendent as follows:

> The superintendent in such districts shall visit the schools of the district, and exercise a general supervision over them, *and report their condition to the board, with proper recommendations,* when he deems

1. An ex officio member of a board is one who is a member by virtue of his title to a certain office, and without further warrant or appoint-

ment. *State ex rel. Hennepin County v. Brandt*, 225 Minn. 345, 31 N.W.2d 5 (1948).

it advisable, or when requested by the board. *He shall make recommendations to the board concerning the employment and dismissal of teachers. He shall superintend the grading of the schools and examinations for promotions and perform such other duties as the board shall prescribe. He shall make directly to the commissioner such reports as shall be required.* (Emphasis added). The emphasized language shows that the superintendent's duties are limited. Therefore, we construe the term "governing body of the school district" to mean only those elected members of the school board who have voting power.

Existing case law inferentially supports our holding that a superintendent of schools is not part of the school district's governing body. In *Jensen v. Independent Consolidated School District No. 85,* 160 Minn. 233, 199 N.W. 911 (1924), it was argued that because a superintendent was an ex officio board member, his employment could be terminated only pursuant to the statutory procedure for removal by the board of one of its members. We rejected this argument and held that the superintendent was not a board member for this purpose:

> [The superintendent's] ex-officio membership is clearly a limited one, and is to exist as the term indicates by virtue of the office of superintendent which he holds. He is such member for advisory purposes and to keep in touch with the affairs of the district. He is to be such ex-officio "member" "during the pleasure of the board."

160 Minn. at 235, 199 N.W. at 912.

Moreover, in *Gilbertson v. Independent School District No. 1,* 208 Minn. 51, 293 N.W. 129 (1940), we held that the school superintendent, unlike a regular board member, was not entitled to receive notice of a special board meeting at which his employment was terminated. This court observed that the superintendent's ex officio non voting membership on the board "puts him in an anomalous position, for about the only function of members is to vote at board meetings." *Id.* at 52, 293 N.W. at 130. The court added that "at best, his function as member ex officio is limited by statute to that of a counselor." *Id.* We must assume that the legislature was aware of the cases that differentiated between elected board members and superintendents when it used the term "governing body" in the Open Meeting Law.

Statutory law also evidences a legislative intent to exclude the superintendent from the purview of the Open Meeting Law. Minn.Stat. § 123.33, subd. 5 (1980), provides that "[a] majority of the *voting members* of the board shall constitute a quorum." (Emphasis added). It is unlikely that the superintendent would be considered a member of the governing body of a school district when his presence at a board meeting is not required for the board to take official action.

Because we hold that a school superintendent is not a member of the school board for purposes of the Open Meeting Law, we need not address appellant's second contention that the telephone conversation between Heusers and Bennett was not a "meeting" within the meaning of Minn. Stat. § 471.705 (1980).[2]

The second issue in this case is whether the closed meeting of the school board members on September 27, which was held at the request of the state mediator, violated the Open Meeting Law. Minn. Stat. § 471.705, subd. 1 (1980) provides that all meetings shall be open to the public "[e]xcept as otherwise expressly provided

---

2. Appellants suggest several other reasons for not subjecting school superintendents to the restrictions of the Open Meeting Law. Foremost among these is that effective administration of the public school system would be severely hampered by the constraints placed by the Open Meeting Law on the superintendent's ability to engage in communications with individual board members. Considerations such as this are beneficial side effects of holding that school superintendents are not part of a school district's "governing body" as that term is used in the statute, but standing alone they are insufficient grounds upon which to base such a holding. Our decision rests on statutory construction and legislative intent.

by statute." The Public Employment Labor Relations Act (PELRA) provides that "[a]ll negotiations, mediation sessions, and hearings between public employers and public employees or their respective representatives shall be public meetings except when otherwise provided by the director." Minn.Stat. § 179.69, subd. 2 (1980). Appellants concede that the September 27 gathering of the board to discuss negotiations was a meeting under section 471.705. The issue is whether that meeting comes within the narrow exception to the Open Meeting Law provided by section 179.69, subd. 2. The issue is one of first impression for this court.[3]

The statute authorizes the mediator (director) to permit nonpublic negotiations, mediation sessions, and hearings between the parties. To hold that the word "between" means that both sides must be together in a nonpublic meeting is too narrow an interpretation.

Once the Bureau of Mediation Services takes jurisdiction of the bargaining process, it is only reasonable to conclude that to aid effectively in resolving the issues between the parties, the mediator may meet with both parties together, or with each party separately, and may direct, or permit, a party to meet without the mediator being present, nonpublicly at any place within or without the district, the mediator, or permitted party, deems suitable.[4]

If the Bemidji meeting is to be held to violate the Open Meeting Law, it should be only on the ground that the mediator did not authorize it to be nonpublic. The trial court in a memorandum made a part of its findings of fact, conclusion of law, and order for judgment correctly stated: "At no time did the mediator ever authorize the board to meet in private." While express authorization certainly is preferable, implied authorization is as valid. Since a mediator had directed the meeting to take place and since negotiations could not be successful unless the board produced increased offer authority and since a public meeting for that purpose would disclose not only to the board, but to the public, including the employees of the district, whatever increase was determined as a new limitation, it was not unreasonable for the board to conclude that it had been impliedly authorized to meet privately.

In summary, we hold that because a school superintendent is not a member of the governing body of a school district, a telephone conversation between a superintendent and a board member does not vio-

---

3. In *Channel 10, Inc. v. Independent School District No. 709*, 298 Minn. 306, 215 N.W.2d 814 (1974), we held that meetings of a school board with its labor negotiators to discuss pending negotiations and to instruct the negotiators as to their authority were not excluded from the Open Meeting Law. *Id.* at 324, 215 N.W.2d at 826–27. However, we pointed out that section 179.69, subd. 2 had not yet become effective at the time the action arose. *Id.* at 324, n.9, 215 N.W.2d at 827 n.9.

4. We recognize that the public interest is best served by conducting certain labor negotiations and negotiation strategy sessions in private. The legislature acknowledged this public interest in a 1981 amendment to the Open Meeting Law, Act of May 11, ch. 174, § 1, 1981 Minn. Laws 516 (current version at Minn.Stat. § 471.705, subd. 1a (1980)), which provides in part:

Subd. 1a. EXCEPTION. Subdivision 1 does not apply to a meeting held pursuant to the procedure in this subdivision. The governing body of a public employer may be a majority vote in a public meeting decide to hold a closed meeting to consider strategy for labor negotiations, including negotiation strategies or developments or discussion and review of labor negotiation proposals, conducted pursuant to sections 179.61 to 179.76. The time of commencement and place of the closed meeting shall be announced at the public meeting. A written roll of members and all other persons present at the closed meeting shall be made available to the public after the closed meeting. The proceedings of a closed meeting to discuss negotiation strategies shall be tape recorded at the expense of the governing body and shall be preserved by it for two years after the contract is signed and shall be made available to the public after all labor contracts are signed by the governing body for the current budget period.

The statute represents an attempt by the legislature to reconcile the requirements of the Open Meeting Law with the provisions of PELRA. However, section 471.705, subd. 1a, was enacted after the action arose in this case and it is therefore inapplicable.

late the Open Meeting Law. We also hold that the September 27 board meeting did not violate the Open Meeting Law.

Reversed.