**THE MINNESOTA DAILY, Appellant,**

v.

**The UNIVERSITY OF MINNESOTA, Respondent.**

Nos. CX–88–2095, CX–88–2114.

Court of Appeals of Minnesota.

Nov. 18, 1988.

Review Denied Jan. 25, 1989.

Marshall H. Tanick, Martin Munic, Tanick & Heins, Minneapolis, for appellant.

Thomas Tinkham, Janet S. Sanderson, Dorsey & Whitney, Minneapolis, for respondent.

Mark R. Anfinson, Minneapolis, for amicus curiae, Minnesota Newspaper Assn.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and SCHUMACHER, JJ.

## OPINION

WOZNIAK, Chief Judge.

The Minnesota Daily sought injunctive relief to compel the University of Minnesota Presidential Search Advisory Committee (PSAC) to hold open meetings. By order on September 30, 1988, the trial court denied injunctive relief, holding that PSAC is not subject to the Minnesota Open Meeting Law. The Daily appealed,[1] and this court expedited briefing and argument. We affirm.

## FACTS

The Board of Regents is the governing body of the University of Minnesota. The regents are in the process of selecting a new university president. On May 12, 1988, the regents decided that an advisory committee should be established.

The University Senate is a representative body of faculty, students, and staff. The University Senate Consultative Committee is a standing subcommittee of the University Senate. According to minutes of regents' meetings submitted to the trial court, the Senate Consultative Committee recommended and suggested PSAC members for approval by the regents. On June 9, 1988, the regents requested that additional members be added to represent the Crookston and Waseca campuses, as well as the agricultural extension programs, and they approved the names submitted.

PSAC is comprised of faculty, student, and staff members. No regents serve on PSAC. It is to provide advice and consultation to the regents on the selection of the president. PSAC will assume an active role in screening applicants and narrowing the field to a short list of finalists, but its decisions are subject to review by the regents. Staff support and payment of expenses are provided by the regents.

Early meetings of PSAC were open. After the committee had established general procedures and adopted a rating scale for evaluating candidates, it announced that future meetings, at which specific candidates would be discussed, would be closed to the public and media. The Minnesota Daily, a newspaper staffed primarily by University of Minnesota students, brought suit, seeking a declaration that such meetings are covered by the Minnesota Open Meeting Law. It also sought injunctive relief.

The trial court held that PSAC is not subject to the open meeting law because it is not the governing body of a public body or a committee of a governing body.[2] On appeal, the Minnesota Daily argues PSAC is a committee of the regents, the governing body of the University.

## ISSUE

Did the trial court err in concluding that PSAC is not subject to the open meeting law?

## ANALYSIS

A. Standard of Review.

■ On appeal from the denial of injunctive relief, this court must view the facts

---

1. Appeal CX–88–2095, seeking review of the September 30 order, was served and filed on October 3. An *order* denying injunctive relief is generally appealable. Minn.R.Civ.App.P. 103.-03(b). However, an *order for judgment* in an injunction action is not appealable or effective until judgment is actually entered, and the proper appeal is then from the *judgment*. *Holliston v. Ernston*, 120 Minn. 507, 139 N.W. 805 (1913). The trial court's September 30 order specifically directed that judgment be entered. Judgment was entered on October 4, and appeal CX–88–

2114, seeking review of the judgment, was filed on October 5. We consolidated the appeals.

2. Although the matter originally came before the trial court on a motion for temporary injunction, it appears the trial court effectively decided the entire action on the merits, without objection by the parties. *See* Minn.R.Civ.P. 65.-02(3) (trial on merits may be advanced and consolidated with hearing on motion for temporary injunction). It is unclear what, if anything, remains to be decided by the trial court.

and evidence in the light most favorable to the prevailing party and determine whether the trial court abused its discretion. *OT Industries, Inc. v. OT-tehdas Oy Santasalo–Sohlberg Ab*, 346 N.W.2d 162, 165 (Minn.Ct.App.1984). However, this case does not turn on application of the factors for injunctive relief. Like the trial court in *OT Industries*, the trial court here held that appellant failed to establish it was entitled to the benefits of a specific statute. The appellate courts need not defer to a trial court's decision on a legal issue.

### B. Applicable Statute.

Except as otherwise expressly provided by statute, all meetings, including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and the governing body of any school district * * * or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public[.]

Minn.Stat. § 471.705, subd. 1 (1986). The statute excepts meetings of the board of pardons and commissioner of corrections, as well as labor negotiation strategy sessions. *Id.*, subds. 1, 1a. The supreme court has also approved a limited exception, based on the attorney-client privilege, for meetings to discuss litigation strategy. *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Authority*, 310 Minn. 313, 251 N.W.2d 620 (1976). Beyond this exception, founded on the supreme court's obligation to regulate the practice of law, judicially created exceptions are generally not permitted. *Channel 10, Inc. v. Independent School District No. 709*, 298 Minn. 306, 215 N.W.2d 814 (1974). Specifically, a judicial exception for interviews of prospective employees for administrative or other sensitive positions is impermissible. *Id.* at 320–21, 215 N.W.2d at 825.

The Minnesota Open Meeting Law was enacted in 1957. 1957 Minn.Laws ch. 773. The law furthers three purposes: (1) to prevent public bodies from acting secretly without the public having an opportunity to detect improper influences, (2) to assure the public's right to be informed, and (3) to afford an opportunity for members of the public to present their views. *St. Cloud Newspapers, Inc. v. District 742 Community Schools*, 332 N.W.2d 1, 4 (Minn.1983), *quoted in Itasca County Board of Commissioners v. Olson*, 372 N.W.2d 804, 806–07 (Minn.Ct.App.1985) (citations omitted). The law is to be construed in favor of public access, with only limited exceptions. *Id.* at 4–5.

The presumption of openness is not absolute, and it may be outweighed by other concerns. The supreme court has endorsed a balancing test between "the public's right to be informed" and its "right to the effective and efficient administration of public bodies." *Moberg v. Independent School District No. 281*, 336 N.W.2d 510, 517 (Minn.1983). However, adopted procedures which foreclose "public discussion altogether," which effectively permit the final decision to be made in private, or which conceal "improper influences such as the personal or pecuniary interest of a public official," cannot be tolerated in furtherance of efficient administration. *Id.* at 517–18.

Prior to 1973, the open meeting law required that "all meetings, including executive sessions of the governing body of a school district * * * and of any board, department or commission thereof, shall be open to the public[.]" Minn.Stat. § 471.705 (1971). The statute applied primarily to local governments and to school boards.

The statute was amended in 1973 to require that "all meetings, including executive sessions, *of any state agency*, board, commission or department when required or permitted by law to transact public business in a meeting, and the governing body of any school district * * * *or other public body, and of any committee*, subcommittee, board, department or commission thereof, shall be open to the public[.]" 1973 Minn.Laws ch. 680, § 1 (emphasis added). (The 1973 legislation also added civil penalties for violations.)

The amendment extended the open meeting law to state agencies and other public

bodies, clarified that access to meetings at which public business could be transacted was the primary objective, and brought committee meetings within the statute for the first time. Senator Hubert H. Humphrey, III, one of the authors of the 1973 legislation, explained, at a hearing before the Senate Governmental Operations Committee, that the amendment would prevent a public body from routinely resolving "itself into a committee of the whole" to avoid the requirement that meetings of the body remain open to the public. *Hearings on S.F. 1480 Before the Senate Governmental Operations Committee*, 68th Minn.Legis., 1973 Session (April 20, 1973).

The supreme court has explained that "[t]he statute, by expressly including meetings of committees and subcommittees, gives fair warning that the *deliberations of governing bodies* are included within its proscription." *St. Cloud Newspapers, Inc. v. District 742 Community Schools*, 332 N.W.2d 1, 7 (Minn.1983) (emphasis added). This statement echoes Senator Humphrey's concern that a governing body not be permitted to simply call itself a "committee" and thereby exclude the public from meetings at which important decisions are made.

We turn next to an application of the statute to the facts of this case.

### C. Application to PSAC.

It is undisputed that PSAC is not the governing body of the university. It is less clear whether it is a "committee thereof." The Daily points to the regents' influence over the composition, duties, and funding of PSAC. However, the trial court found PSAC is not a committee of the regents because its members were chosen by the University Senate Consultative Committee, and not by the regents. In addition, no regent is actually a member of PSAC. In a literal sense, it is not a committee *of* regents. For that reason, much of our discussion will involve the functions of PSAC.

Because the statute, in its current form, focuses on meetings where public business is transacted, and the supreme court has indicated that inclusion of committees is intended to extend the presumption of openness to deliberations of governing bodies, resolution of this case turns on whether PSAC meetings are, in effect, the deliberations of the regents. Although few decisions of the supreme court have applied the "committee thereof" portion of the statute to advisory bodies, cases defining what constitutes a "meeting of the governing body" are illustrative.

The supreme court has held that a discussion between *two* city council members over lunch on a matter pending before the council is *not* a meeting of the governing body. *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757 (Minn.1982). On the other extreme, any scheduled gathering of *all* members of a governing body *is* a meeting of the governing body, even if it is unrelated to specific pending matters. *St. Cloud Newspapers, Inc. v. District 742 Community Schools*, 332 N.W.2d 1 (Minn. 1983).

Both of these cases emphasized the identity and number of attendees at a meeting. As previously noted, PSAC meetings are *not* a gathering of any of the regents (no regents are actually members of PSAC). Under this analysis, PSAC meetings are not, in effect, meetings of the governing body.

The Daily speculates that PSAC recommendations will strongly influence the regents' final decision. However, the supreme court's opinion in *Minnesota Education Association v. Bennett*, 321 N.W.2d 395 (Minn.1982), indicates that the opportunity to influence the governing body is not dispositive. The court there held that a phone conversation between a school board chairman and the superintendent of schools was not a meeting of the governing body. The superintendent was an ex-officio member of the board. He was required to report to the board and make recommendations. The supreme court found "it is the power to decide, as opposed to the right to recommend, that determines whether one is a member of a governing body." *Id.* at 397. The term "governing body" was construed to mean *only* elected school board members with voting rights. *Id.* at 398.

per

Like the school superintendent, PSAC has the power to make recommendations, and the obligation to report, but no power to *decide* who the next president will be. It has no authority to set policy or make the final decision. It cannot "transact public business" because that power is vested in the regents. Participation in the process, alone, was insufficient to bring the superintendent within the ambit of the statute in *Bennett,* and participation, without more, will not bring PSAC within the statute.

The facts presented in *Moberg v. Independent School District No. 281,* 336 N.W.2d 510 (Minn.1983), are closely analogous to this case. A school board had become deadlocked on which high school to close. The board created a factfinding panel, comprised of nonmembers of the school board, to meet in closed sessions, gather information, and make a recommendation to the board. That recommendation was immediately adopted by the school board.

The supreme court held that numerous informal discussions among school board members did not violate the open meeting law, and it clarified that a "meeting" is a gathering of a *quorum* "at which members discuss, decide, or receive information as a group on issues relating to the official business of that governing body." *Id.* at 518.

By focusing on the quorum requirement, the supreme court again emphasized the importance of the power of the governing body to actually transact business, as they had in *Bennett* a year earlier. *See Minnesota Education Association v. Bennett,* 321 N.W.2d 395, 397 (Minn.1982). The emphasis on a quorum of members also reflects the earlier reliance on the number and identity of attendees, critical in *St. Cloud Newspapers, Inc. v. District 742 Community Schools,* 332 N.W.2d 1 (Minn. 1983), and *Hubbard Broadcasting, Inc. v.*

*City of Afton,* 323 N.W.2d 757 (Minn. 1982).[3]

As noted in our preliminary discussion of the statute, the supreme court in *Moberg,* in holding that informal discussions among board members were not "meetings of the governing body," also approved a balancing of the public's right to be informed "against the public's right to the effective and efficient administration of public bodies." *Moberg,* 336 N.W.2d at 517. The University has asserted that disclosure of candidate names will hamper the presidential search, while the trial court recognized that this claim is disputed by the Daily. In light of our holding that PSAC meetings are not covered by the statute, we decline to speculate on the effect open meetings would have upon the search.

■ The names of job applicants are private data. Minn.Stat. § 13.43, subd. 3 (1986). For that reason, the regents decided not to discuss the candidates at their meetings, which are open. A meeting which is required by statute to be open may not be closed just because the Data Practices Act applies to matters which will be discussed at the meeting. *Itasca County Board of Commissioners v. Olson,* 372 N.W.2d 804 (Minn.1985); *but see* Minn.Stat. § 471.705, subd. 1b (1986) (copy of printed materials relating to agenda items at open meeting must be available to public *unless* materials contain data which is not public under Data Practices Act).

The supreme court in *Moberg* found the school board's "decision to hire a factfinding panel was a neutral, fair-minded solution with no foreordained result." *Moberg,* 336 N.W.2d at 517. The court endorsed the advisory function of the panel, concluding it was proper for the school board to "listen to a group of non-members on important matters," but warning that a governing body cannot abdicate its responsibility to make difficult decisions to an outside

**3.** The Daily's continued reliance on a 1974 opinion of the Minnesota Attorney General is puzzling, since that opinion has little persuasive value after *Moberg. See* Op.Atty.Gen. 63–a–5 (Oct. 28, 1974). That opinion indicated that conversations between two city council members (fewer than constituted a quorum) were

"meetings" subject to the open meeting law. In 1982, *Hubbard* held that a gathering of two council members was *not* a "meeting," and in 1983 *Moberg* clearly held that such conversations are not within the purview of the statute where no quorum able to transact business has gathered.

panel and should not "adopt such a panel's recommendation without affording an opportunity to the public to react to the recommendation." *Id.* at 517 and n. 5.

■ Similarly, there is no allegation the regents have adopted this procedure only to achieve a preordained result. They have stated that finalists' names will be announced and final interviews will be conducted in public. In short, the procedure adopted in this case seems to balance the public's right to information with efficient administration, as permitted by *Moberg.*

The members of the panel in *Moberg* were chosen exclusively by the school board. They met in private. Their recommendation on a very important issue pending before the board was immediately adopted. The supreme court did not find that advisory panel to be a committee of the governing body within the meaning of the open meeting law, and, accordingly, we cannot agree with the Daily's assertion that PSAC is a committee of the regents.

The Daily also relies upon a 1975 opinion of the Minnesota Attorney General, which concluded that meetings of advisory panels to the State Arts Council must be open to the public, because the panels were "committees" of the governing board of a state agency. Op.Atty.Gen. 10–b (Feb. 5, 1975). The opinion noted that a "major" purpose behind creation of advisory bodies "is to free the parent body from the necessity of examining each proposal in full detail." *Id.* at 5. Thus, the attorney general concluded that an advisory panel which was (a) merely sanctioned by the governing body and not established by it, (b) comprised entirely of persons who were not members of the parent body, and (c) unable to make final decisions but authorized only to discuss and make recommendations, was a committee of the governing body.

"While the attorney general's opinions are entitled to careful consideration at all times, they are not binding upon the courts." *Village of Blaine v. Independent School District No. 12,* 272 Minn. 343, 353, 138 N.W.2d 32, 39 (1965). The legislature did not confer the judicial function of statutory interpretation and construction upon the attorney general (an executive officer) and opinions of the attorney general do not foreclose such construction by this court. *Lindquist v. Abbett,* 196 Minn. 233, 236, 265 N.W. 54, 55 (1936).

The construction of the open meeting law reflected in the 1975 opinion is not consistent with the supreme court's approval, in the 1983 decision in *Moberg,* of the use of a nonmember factfinding panel, or its heavy reliance, in the 1982 decision in *Bennett,* on the power to actually decide matters rather than make recommendations.

The supreme court's warning in *Moberg* that a governing body may not abdicate its responsibilities to an outside panel is equally applicable here. The regents cannot avoid public comment on a controversial matter by delegating the choice of a president to PSAC. We are mindful of the Daily's concern that PSAC will recommend only one finalist, thereby effectively closing the entire selection process. The University's counsel has assured this court that will not occur and all finalists will be interviewed at an open meeting.

Establishment of PSAC appears to have been "a neutral, fair-minded solution with no foreordained result," *Moberg,* 336 N.W.2d at 517, and we are compelled to agree with the trial court that PSAC is not within the statutory definition of a committee of the governing body.

## DECISION

The trial court correctly held that meetings of the University of Minnesota Presidential Search Advisory Committee are not within the purview of the Minnesota Open Meeting Law, and properly denied injunctive relief.

AFFIRMED.