Dr. Leslie Wyatt, President Arkansas State University Post Office Box 10 State University, Arkansas 72467-0010
Dear Dr. Wyatt:
I am writing in response to your request for an opinion on two questions regarding the "Chancellor Search Advisory Committee" at Arkansas State University ("ASU"). You inquire whether meetings of this Committee are "subject to the open meetings requirement of the Arkansas Freedom of Information Act" ("FOIA") and whether "documents held by members of the Chancellor Search Advisory Committee fall within the definition of public records as set out in A.C.A. § 25-19-103(5)(A)." You have enclosed with your request a letter from the University's counsel, who poses these two issues.[1] Specifically, the two questions posed in this regard are as follows:
 1. Is the Chancellor Search Advisory Committee subject to the open meetings requirement of the Arkansas Freedom of Information Act? Recall that the Chancellor Search Advisory Committee is an advisory committee only. The committee is made up of faculty, staff, students, and community representatives. No member of the Board of Trustees serves on the advisory committee. The committee will not select the chancellor and has no authority to do so. The advisory committee will merely assist in identifying potential candidates.
 2. Do documents held by members of the Chancellor Search Advisory Committee fall within the definition of public records as set out in A.C.A. § 25-19-103(5)(A)? Recall that the Chancellor Search Advisory Committee is made up of persons who are providing a service to the community and the university by considering chancellor candidates. They are not acting in the course and scope of their employment and some of the members are merely community members. Any records created by this committee constitute a record of a private committee and not a record of the performance of an official function carried out within the scope of public employment.
RESPONSE
It is my opinion that the answer to your first question will depend upon the role of the Chancellor Search Advisory Committee and the power invested in it. In my opinion purely advisory bodies, with no decision-making power are not considered "governing bodies" under the applicable "open meetings" provisions of the FOIA, and as a consequence are not subject to the Act's provisions regarding the conduct of meetings. Op. Att'y. Gen. 2003-170. In my opinion, however, if any decision-making power has been delegated to the Committee, its meetings will be subject to the Act's provisions. One of my predecessors has concluded, and I agree, that if a "screening committee" has been delegated authority to eliminate candidates from further consideration, even if the ultimate employment decision rests with the board, the FOIA in all likelihood applies. Op. Att'y. Gen. 1994-339. In my opinion the answer to your second question is "yes." In my opinion the records created by the Committee, a government-created agency, in furtherance of functions requested of it by ASU, fall within the definition of "public records." This is true irrespective of whether its meetings are subject to the "open meetings" provisions of the FOIA.
Question 1 — Is the Chancellor Search Advisory Committee subjectto the open meetings requirement of the Arkansas Freedom ofInformation Act? Recall that the Chancellor Search AdvisoryCommittee is an advisory committee only. The committee is made upof faculty, staff, students, and community representatives. Nomember of the Board of Trustees serves on the advisory committee.The committee will not select the chancellor and has no authorityto do so. The advisory committee will merely assist inidentifying potential candidates.
In my opinion the answer to this question will depend, as a factual matter, upon the decision-making power of the Committee and its role in the selection process.
Subsection 25-19-106(a) (Supp. 2005) of the Arkansas Code provides:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
(Emphasis added).
In addition, the term "public meetings," as used in the FOIA, is defined as follows:
 (4) "Public meetings" means the meetings of any bureau, commission, or agency of the state, or any political subdivision of the state, including municipalities and counties, boards of education, and all other boards, bureaus, commissions, or organizations in the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds[.]
A.C.A. § 25-19-103(4) (Supp. 2005).
The FOIA's open meetings provisions only apply to "governing bodies." See Ops. Att'y. Gen. 2000-260; 1999-407; 1998-113; 1998-169; 1997-202; and 1996-074. As my immediate predecessor stated in Op. Att'y. Gen. 2002-092:
 The FOIA does not define the term "governing body," and the Arkansas Supreme Court has never found occasion to address the issue. However, the Attorney General has consistently taken the position that the pertinent question in determining whether a group constitutes a "governing body" is whether the group has decision-making authority. See, e.g., Ark. Ops. Att'y Gen. Nos. 2001-324, 2000-051 and 99-407; see also J. Watkins, THE ARKANSAS FREEDOM OF INFORMATION ACT 49 et seq. (3rd ed. 1998). Groups that are advisory in nature do not generally constitute "governing bodies" and consequently are not subject to the FOIA's open-meetings requirement.
Id. at 5.
With regard to advisory entities, it has been stated that:
 Although there are no Arkansas Supreme Court cases addressing this precise question, there is authority in other jurisdictions for the general proposition that advisory committees do not fall within state sunshine statutes similar to the [FOIA]. See
Watkins, OPEN MEETINGS UNDER THE ARKANSAS FREEDOM OF INFORMATION ACT, 38 Ark. L. Rev. 268, 294-295 (1984), citing Sanders v. Benton, 579 P.2d 815 (Okla. 1978) and McLarty v. Board of Regents, 231 Ga. 22, 200 S.E.2d 117 (1973). The rationale set forth in those cases is premised upon the theory that committees lacking final decision-making or policy-making authority are generally not considered" governing bodies" of the municipalities or counties for purposes of the FOIA.
Op. Att'y Gen. 2000-260 (quoting Op. Att'y Gen. 1991-288 at 1-2). See also, Op. Att'y. Gen. 2003-170, at 4 and footnote 2 (citing a host of cases from other jurisdictions on the point); and Ops. Att'y Gen. 1999-407 and 1998-169.
As also previously noted, however:
 . . . [I]f a governing body in fact delegates its decision-making authority, rendering the "committee" itself a "governing" rather than "advisory" body, the open-meetings requirement will clearly apply. As Professor Watkins observes:
 The FOIA's open meeting requirements apply to meetings of groups other than committees composed of members of the governing body, if decision-making authority has been delegated to those groups. For example, in Baxter County Newspapers, Inc. v. Medical Staff of Baxter General Hospital
[273 Ark. 511, 622 S.W.2d 495 (1981)], the Supreme Court held that meetings of the "credentials committee" of the medical staff at a county hospital must be open to the public. Acting pursuant to authority delegated by the hospital's board of governors, the staff and the committee-both of which consisted of physicians rather than members of the board-determined whether particular doctors would be allowed to practice at the facility. Under these circumstances, the medical staff is a "governing body" subject to the FOIA, and its credentials committee must hold open meetings in accordance with Pickens.
Watkins, supra at 52 (footnotes omitted).
Op. Att'y. Gen. 2002-092 at 7-8.
More recently, I stated in Op. Att'y. Gen. 2003-170 that "[b]odies that have been delegated power to make decisions by the governing body (even if such bodies do not consist of members of the governing body) are subject to the Act." Id. at 8, citingBaxter Co. Newspapers v. Baxter Gen Hosp. Staff, 273 Ark. 511,622 S.W.2d 495 (1981). This statement is supported by numerous Attorney General opinions issued over the years. See, e.g.,
Ops. Att'y. Gen. 2002-092; 2000-251; 2000-260; 1999-407; and 1998-169. See also cases cited in Op. Att'y. 2003-170.
In my opinion, therefore, the answer to your first question concerning the applicability of the FOIA's open meeting provisions to the Chancellor Search Advisory Committee will depend upon its role in the search process and the power invested in it.
One of my predecessors addressed a similar issue involving a committee set up to screen applications for a school superintendent. In Op. Att'y. Gen. 1994-339, at issue was a screening committee set up to solicit and review applications for, and recommend to the school board, a school superintendent. The committee at issue was made up of members and non-members of the school board. In response to the question of whether the committee's meetings were subject to the FOIA, the Attorney General concluded that the FOIA in all likelihood applied to the committee. He stated:
 It seems clear that the open meetings requirement will apply to groups other than committees composed of members of the governing body if there has been a delegation of decision-making authority. See Baxter County Newspapers, Inc. v. Medical Staff of Baxter General Hospital, 273 Ark. 511, 622 S.W.2d 495
(1981) and Freedom of Information Act, supra, at 45. Because it may be concluded that such a delegation has occurred in this instance, it is my opinion that the screening committee is likely subject to the open meetings requirement. It appears, from the information provided, that one of the purposes of the committee is to review applications, presumably for the purpose of eliminating candidates. Although the ultimate employment decision rests with the school board, the exercise of decision-making authority is, it seems, inherent in the screening process. Thus, while the presence of board members may raise an initial presumption, or at least a concern regarding the FOIA's applicability, the exercise of decision-making authority removes any doubt.
Id. at 2-3.
Although, as your counsel has noted, no members of the ASU Board of Trustees serve on the Chancellor Search Advisory Committee, Opinion 1994-339's conclusion concerning the delegated power of the school board committee appears to operate independently of the participation of the school board members at issue therein. In addition, Professors Watkins and Peltz, in the latest edition of The Arkansas Freedom of Information Act, (m m Press 4th
Ed. 2004), state the following in addressing the conclusion reached in Opinion 1994-339:
 . . . [A] screening committee consisting of school board members and other persons must comply with the FOIA when its task is to solicit and review applications for school superintendent and make a recommendation to the board. Although the final hiring decision may rest with the board, the committee exercises decision-making authority in the sense that the screening process eliminates some candidates. On the other hand, departmental faculties at the University of Arkansas, Fayetteville are not governing bodies because they have not been delegated authority to participate directly in the system of campus governance. In sum, the focus is not upon the group's membership, but upon its authority.
Id. at 66-67 (footnotes omitted). See also Op. Att'y. Gen.92-124 (assuming, as did opinion requester, that meetings of school board selection committee formed to screen applications for a new superintendent were subject to the FOIA and concluding that FOIA was violated where members ranked the applicants in order of member preference by unsigned secret ballots).
The conclusion of Opinion 1994-339 states that the exercise of decision-making authority is "inherent in the screening process" and focuses on the elimination of some candidates from consideration as the exercise of delegated decision-making by such committees. Although I am in receipt of several pieces of correspondence from your counsel, counsel for the Arkansas Democrat-Gazette and related attachments, I am not empowered as a fact-finder in the issuance of Attorney General opinions. I cannot determine in this instance whether the Chancellor Search Advisory Committee has been delegated or will exercise any decision-making power by the Board of Trustees of the University. Your counsel has stated in her March 29th letter, citing a February newsletter you prepared, that the Committee will "offer advice," "help identify leading candidates," and "develop recommendations to the Board of Trustees." The same newsletter states that "in April, the consultant[2] and the Search Advisory Committee will resume meeting to identify candidates who should receive continued attention. . . ." I cannot determine from this information alone the exact power the Committee will possess. If the Committee does exercise any decision-making power, in my opinion its meetings are subject to the FOIA's provisions regarding the conduct of meetings.[3] If it is a purely advisory body, in my opinion the Committee's meetings will not be subject to those provisions.[4]
In my opinion, the answer to your first question provided above is not inconsistent with National Park Medical Center v.Arkansas Department of Human Services, 322 Ark. 595,911 S.W.2d 250 (1995), upon which your counsel relies. Your counsel states that:
 Search committees are not governed by the open meeting provisions of the Arkansas Freedom of Information Act for the exact reasons stated in National Park Med. Ctr., Inc. v. Arkansas DHS, 322 Ark. 595, 911 S.W.2d 250 (1995). In that case, staff meetings were held to develop bid solicitations. A challenge was made to those committee meetings under the FOIA which the court found "meritless." The Arkansas Supreme Court held that Section 25-19-106
does not apply to staff meetings and that an "administrative nightmare" would ensue if such meetings were required to comply with the FOIA.
March 29th letter from Lucinda McDaniel of Womack, Landis, Phelps, McNeil McDaniel, Jonesboro, Arkansas.
However, as I stated in Op. Att'y. Gen. 2003-170:
 . . . [I]n National Park Med. Ctr., Inc. v. Arkansas DHS, 322 Ark. 595, 911 S.W.2d 250 (1995), the court held that the open meetings requirement of the FOIA did not apply to the "staff meetings" of the Arkansas Department of Human Services at which the concepts of a bid solicitation were developed. The court did not mention the "governing bodies" language. The court simply quoted the open meetings requirement and concluded without elaboration that the DHS staff was not the type of body contemplated by the open meetings requirement. The court said that to require staff meetings to be held publicly would result in an" administrative nightmare."
Id. at 4.
The court in National Park Medical Center, immediately after reciting A.C.A. § 25-19-106(a), which contains the "governing bodies" limitation, stated that: "Section 25-19-106, therefore, does not plainly encompass appellees' challenged staff meetings" and upheld the trial court's determination that a meeting of this sort "does not appear to be the type of meeting that is contemplated by the statute." Id. at 602. The court presumably agreed with the trial court that DHS staff was not a "governing bod[y]" of an "organization" of the State under A.C.A. §25-19-106(a).
I cannot conclude that this case is controlling precedent on the question regarding the Chancellor Search Advisory Committee. The issue in National Park Medical Center was a staff meeting, not a meeting of a specially created "advisory" body like the Chancellor Search Advisory Committee. It is not clear that the particular DHS "staff" members at issue in National Park MedicalCenter constituted any type of "body," governing or otherwise, within the meaning of the FOIA. The same cannot be said for the specially created Chancellor Search Advisory Committee. In my opinion, therefore, the question of whether the Chancellor Search Advisory Committee is subject to the open meetings provisions of the FOIA is determined by its decision-making power. This is particularly true in light of the long history of Attorney General opinions and secondary authority issued both before and after the National Park Medical Center decision, hinging the applicability of the FOIA's open meeting requirements on the decision-making power of the entity in question. See again, Op. Att'y. Gen. 2003-170 and cases cited therein (adhering to the "governing bodies" decision-making power distinction as providing the test to be applied to advisory committees despite the holding in National Park). See also Watkins and Peltz, supra at §§ 2.04[b][2]; 2.04[d] at p. 65-66, and 69-73.
Question 2 — Do documents held by members of the ChancellorSearch Advisory Committee fall within the definition of publicrecords as set out in A.C.A. § 25-19-103(5)(A)? Recall that theChancellor Search Advisory Committee is made up of persons whoare providing a service to the community and the university byconsidering chancellor candidates. They are not acting in thecourse and scope of their employment and some of the members aremerely community members. Any records created by this committeeconstitute a record of a private committee and not a record ofthe performance of an official function carried out within thescope of public employment.
In my opinion the answer to this question is "yes."
The FOIA defines the term "public records" as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A). Subsection 25-19-105(a)(1) provides:
 Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.
In my opinion, even if the Chancellor Search Advisory Committee is a purely advisory body, the meetings of which are not subject to the open meetings requirements of the FOIA, its records can nonetheless be "public records" for purposes of the definition set out above.
As stated in Op. Att'y. Gen. 92-124, fn.1: "Although there is some question whether "advisory committees" are subject to the open meetings provision of the FOIA, such committees are generally subject to the open records provision of the act."Id., relying on Op. Att'y Gen. 1991-288.
This issue is also discussed in Op. Att'y. Gen. 2000-251 as follows:
 As an initial matter, I must explain that even if the board is not a "governing body" and therefore not subject to the open meetings requirement of the FOIA, the board is nevertheless subject to the open records requirement of the FOIA. The "governing body" standard does not apply to the open records requirement. Rather, the fact that the board is a governmental agency will suffice to render it subject to the open records requirement of the FOIA. Op. Att'y Gen. No. 1999-407; Watkins at 55. Under the FOIA, the entities who are subject to the open records requirement are "governmental agenc[ies] and any other agency wholly or partially supported by public funds." A.C.A. § 25-19-103(1).A.C.A. § 25-19-103(1).
Id. at 5.
This same issue was addressed in Op. Att'y Gen. 2002-092, wherein my predecessor stated the following regarding the applicability of the FOIA's open records requirements to the Board of Visitors at the University of Arkansas Community College at Hope, which was alleged to act in an advisory capacity to the University of Arkansas Board of Trustees after a merger between that institution and the Red Rock Technical College:
 Applying these statutes, if UACCH qualifies as a governmental entity, its records as defined are subject to disclosure. This conclusion would apply even if its Board of Visitors were deemed purely advisory and as such exempt from the FOIA's open-meetings requirement. As noted by Professor Watkins:
 The FOIA's "public funding" provision should be sufficient to make the records of advisory groups subject to inspection under the act even though their meetings can apparently be closed to the public. This seemingly contradictory result follows from the fact that the open meeting requirement applies only to "governing bodies. . . ." Insofar as records are concerned, the Arkansas courts will not be required to draw the line between a governing body and one that is merely advisory, for the FOIA applies to the records of any entity" wholly or partially supported by public funds or expending public funds." Because advisory bodies established by government agencies generally receive direct public funding for their activities and are involved in matters of public concern, their records are subject to the act. Moreover, advisory committee records should be available under the act directly from the government agency that the group was established to assist.
Watkins, supra at 54-55 (footnotes omitted).
Id. at 6.
A number of previous Attorney General opinions have discussed the public nature of records kept by advisory committees. For example, a similar issue involved the Citizens Advisory Committee for the Northwest Arkansas Regional Airport Authority ("CAC") discussed in Op. Att'y. Gen. 91-288. The CAC was an advisory group to the Airport Authority and its members were appointed by city and county governments. The Opinion concluded that although meetings of the CAC might not be subject to the open meetings provisions if it was a truly advisory body, its records were subject to the open records requirements because public funds were expended in support of CAC activities.
Similarly, Op. Att'y. Gen. 1995-128 addressed a "Governor's Task Force for a New Constitution." The task force was an "informally created body" comprised of private citizens. Although it was concluded that it was unclear whether the Task Force was a "government agency" for purposes of the definition of "public records," this determination was deemed unnecessary, because in any event the Task Force was in receipt of public funds, which brought it within the definition as an "agency wholly or partially supported by public funds."
Finally, another similar issue involved the "Arkansas Division of Volunteerism Advisory Council" discussed in Op. Att'y. Gen.1999-407. The following was stated with regard to its records:
 I am unaware of the exact nature of the "public funding" of the Advisory Council. In my opinion, however, because the Council is created by state law and is clearly a governmental entity, direct public funding is not a prerequisite to the act's applicability to the records of the Council. The FOIA defines "public records" as those "which constitute a record of the performance or lack of performance of official functions which are or should be carried out by . . . a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds." In this regard, the act applies to all governmental entities, whether they are "wholly or partially supported by public funds or expending public fund" or not. Cf. Op. Att'y Gen. 1995-128.
Id. at 4. See also Opinion No. 2005-187 ("It has been stated, based upon the definition of `public meetings' set out earlier herein, that `[t]he FOIA applies to all governmental entities . . .' Op. Att'y. Gen. 2005-067, citing Op. Att'y. Gen. 2002-274") and Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (4th ed. 2004) at 31 (stating that "[d]espite the varying phraseology [in A.C.A. § 25-19-103(5)(A); A.C.A. § 25-19-106(a) and A.C.A. § 25-19-107(a)] these provisions make plain that all governmental entities in Arkansas, whether state or local in nature, are subject to the FOIA").
Your counsel has suggested that the Chancellor Search Advisory Committee is a "private committee" and its records are "not a record of the performance of an official function carried out within the scope of public employment."[5]
There are two ways, under the recitation of law set out above, in which the Chancellor Search Advisory Committee's records could be subject to the FOIA. If the Committee is a "governmental agency" it is an entity encompassed within A.C.A. § 25-19-103(5)(A) because, as noted above, the FOIA's records requirements apply to all governmental entities. Whether particular documents of the Committee are "public records" within this definition would depend upon whether the records "reflect the performance or lack of performance of official functions."[6] Although I am not a finder of fact, in my opinion the Chancellor Search Advisory Committee is in all likelihood a governmental agency and its records reflect the performance of official functions. Clearly, the Committee was created by government to assist government in its "official functions." Although some of the members of the Committee are "merely community members," this fact does not render the Committee nongovernmental, in my opinion. Cf. Op. Att'y. Gen. 2002-092 (concluding that the Board of Visitors at UACCH, a body comprised of the former Board of the Red Rock Technical College prior to its merger with the University, was "indisputably a public entity").
In any event, even if the Committee were indeed a "private committee" as your counsel suggests, an assertion with which I disagree, it would nonetheless be subject to the "public records" requirements if it is "wholly or partially supported by public funds." This requirement has been interpreted to mean that the entity receives direct public funding. See Sebastian CountyChap. Am. Red Cross v. Weatherford, 311 Ark. 656, 661,846 S.W.2d 641 (1993). You have not indicated whether the Chancellor Search Advisory Committee is in receipt of direct public funding. If it is, in my opinion its records fall within the definition of public records even if it is regarded as a "private committee."See Watkins, quoted above ("Because advisory bodies established by government agencies generally receive direct public funding for their activities and are involved in matters of public concern, their records are subject to the act"). Again, in my opinion, the activities of the Committee reflect "official functions" for purposes of the A.C.A. § 25-19-103(5)(A) definition of "public records."[7]
Notwithstanding a potential factual issue regarding public funding, it is my opinion, nevertheless, that the Committee is governmental in nature, and the public funding issue is therefore not controlling. In my opinion, therefore, the answer to your second question is "yes."
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] My office has received two letters from your counsel, one dated March 23, 2006, inquiring about the FOIA's applicability to records of the Committee, and one dated March 29, 2006, adding an additional question concerning public access to meetings of the Committee. I am also in receipt of intervening correspondence from counsel for the Arkansas Democrat-Gazette newspaper, dated March 28th, setting out the newspaper's position with regard to meetings and records of the Committee. Two reporters with the Democrat-Gazette made FOIA requests for "[a]ll public records concerning the Chancellor Search Advisory Committee" and "[a]ll public records concerning meetings of the Chancellor Search Advisory Committee." See March 22, 2006 letter from Hilary Hilliard (Reporter) and Danny Shameer (Assistant City Editor). After some initial confusion about whether the reporters sought to attend meetings of the Committee (in addition to accessing the records of the Committee), it was made clear that the right to attend meetings of the Committee was at issue, and your counsel, in the March 29th letter appended to your request, has now inquired about both issues.
[2] It is my understanding that a private search firm and its consultant were initially engaged to assist in the Chancellor search, but the firm terminated its contract with the University after questions arose over the applicability of the FOIA. See
Sherry F. Pruitt, "Search Firm Quits A-State," Jonesboro Sun, March 31, 2006.
[3] You have not inquired about the applicability of any exception to the open meetings requirement that might permit the Committee to meet in private or "executive" session to conduct its business, focusing instead on the advisory nature of the Committee and the FOIA's inapplicability to it. See in this regard, however, A.C.A. § 25-19-106(c)(1) and (c)(2)(B) (permitting executive sessions for the purpose of "considering employment, appointment, promotion, demotion, disciplining, or resignation of any public officer or employee," and authorizing a person being interviewed for the top administrative position in an agency to be present at the executive session, respectively); and Ops. Att'y. Gen. 1994-339 (". . . a governing body may meet in executive session to screen and review applications for employment" relying on Op. Att'y Gen. 1993-403, but stating that: "The meeting must . . . be held to consider individual applicants; that is, the meeting must revolve around a specific individual or individuals, and not policies. See also Ops. Att'y Gen. 1991-070; 1987-080; and 1976-141.
[4] Several cases from other jurisdictions on search committees and several law review articles addressing the issue may also be accessed on the topic, although many of the cases turn upon the particular state law at issue and upon their own particular facts. See, e.g., Wood v. Marston, 442 So.2d 934 (Fla. 1983) (faculty search committee for law school dean was delegated decision-making power to eliminate some candidates and was a "board" or "commission" for purposes of Florida Sunshine Law);Lexington Herald-Leader Company v. University of KentuckyPresidential Search Committee, 732 S.W.2d 884 (Ky. 1987) (university presidential search committee comprised partially of trustees was a public agency subject to the Kentucky Open Meetings Act, which expressly applied to advisory bodies, but committee was allowed to meet in private under statute allowing private meetings for discussion that might lead to "appointment," but only to discuss individual candidates); The Minnesota Dailyv. University of Minnesota, 432 N.W. 2d 189 (Minn. 1988) (meetings of Presidential Search Advisory Committee, which was comprised of other than University Board members, were not required to be open under Open Meetings Law, because advisory committee was not a "committee" of the Board and it couldn't "transact business" under wording of applicable statute); BoothNewspapers, Inc. v. University of Michigan Board of Regents,444 Mich. 211, 507 N.W.2d 422 (1993) (holding that Michigan Open Meetings Act applied to presidential selection procedure undertaken by university board or by any type of subcommittee it creates if committee is empowered by board resolution to exercise authority and requiring "reduction" of candidates to be undertaken in public); Federated Publications, Inc. v. Board ofTrustees of Michigan State University, 460 Mich. 75,594 N.W.2d 491 (1999) (Michigan Open Meetings Act could not constitutionally be applied to presidential search committee comprised partially of Board members under constitutional provision requiring only "formal" sessions of the Board to be open); and Star TribuneCompany v. University of Minnesota Board of Regents,683 N.W.2d 274 (2004) (holding that open meeting law applied to university board's presidential search process, which involved a Presidential Search Advisory Committee, and application of act did not violate constitutional provision "perpetuating" University's powers under territorial charter, and disagreeing with and distinguishing Federated Publications, above). Seealso, Note, In the Shade of the Ivy: No Sheltering Arbor inMinnesota for University Presidential Candidates in Star TribuneCo. v. University of Minnesota Board of Regents, 27 Hamline L. Rev. 311 (Spring 2004); Michael J. Sherman, How Free is FreeEnough? Public University Presidential Searches, UniversityAutonomy, and State Open Meetings Acts, 26 J.C. U.L. 665 (Spring, 2000); and Nick Estes, State University PresidentialSearches: Law and Practice, 26 J.C. U.L. 485 (Winter 2000).
[5] I should note as an initial matter that the definition of "public records" set out above is not limited to "record[s] of the performance of an official function carried out within the scope of employment." As noted above in Opinion 2000-251: "Under the FOIA, the entities who are subject to the open records requirement are "governmental agenc[ies] and any other agencywholly or partially supported by public funds." (Emphasis added.) In addition, to be "public records" such records must "reflect the performance or lack of performance of officialfunctions." A.C.A. § 25-19-103(5)(A) (emphasis added).
[6] The ultimate question of whether individual "public records" are subject to inspection and copying under the Act would also depend upon the applicability of any pertinent exemption from disclosure. Your second question does not inquire about the applicability of any exemptions, and as a consequence I have not addressed the issue in the text of this opinion. I will note, however, that my predecessors have concluded and I agree that job applications and resumes, with a few necessary redactions for social security numbers, etc., are generally not exempt from inspection and copying and that "a list of applicants to interview would . . . constitute a public record under the FOIA." Ops. Att'y. Gen. 2002-068 and 1993-403. In Op. 1993-403, one of my predecessors concluded that "[e]ven if it was judicially determined that such a list constituted a `personnel record,' it is my opinion that disclosure would generally not constitute a clearly unwarranted invasion of personal privacy."Id. at 2. The Arkansas FOIA thus provides no general exemption shielding job applicant information, and the Arkansas legislature has not seen fit, as have the legislatures of some states, to specifically shield records produced in presidential searches at state universities. See, e.g., Texas Gov. Code Ann. § 552.123 and New Mexico Stat. Ann. § 14-2-1(7).
[7] Cases from other jurisdictions that may be helpful on the issue include Hubert v. Harte-Hanks Texas Newspapers, Inc.652 S.W.2d 546 (1983) (records of presidential "search advisory committee" comprised of community members with Chancellor as executive officer of committee were not exempted under "personnel files" exemption, because disclosure of names and qualifications of candidates considered by committee would not amount to a "clearly unwarranted invasion of personal privacy"); Board ofRegents v. The Atlanta Journal, 259 Ga. 214, 378 S.W.2d 305 (1989) (clearly resumes, applications and vitae collected by Presidential Search Advisory Committee were public records, which statute defined as being prepared, maintained or received in the course of the operation of a public office or agency); ArizonaBoard of Regents v. Phoenix Newspapers, Inc., 167 Ariz. 254,806 P.2d 348 (1991) (names and resumes of persons in the "prospect pool" in search conducted by presidential search committee, comprised of several board members and community members, were not required to be released, but information on final candidates was open, pursuant to balancing test under statute that did not define "public records"); and Star Tribune, supra (names of finalists for university president were open to public inspection and copying under statute shielding applicants' names, but not finalists' names, for positions in public employment). Seealso, Charles N. Davis, Scaling the Ivory Tower: State PublicRecords Laws and University Presidential Searches, 21 J.C. 
U.L. 353, 367 (Fall 1994) ("The outcomes of cases challenging the denial of access to university presidential-search records demonstrate that the public's right to access to the search process outweighs the privacy interests of either the applicants or the university. The prevalent arguments against open searches, i.e., that statutory exemptions of personnel or personal privacy help protect applicants from uninvited intrusion, have not succeeded.")